Susan Phyllis GEHNERT, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 97–175.

Supreme Court of Wyoming.

April 2, 1998.

Bert T. Ahlstrom, Jr., Cheyenne, for appellant (defendant).

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Robin Sessions Cooley, Assistant Attorney General, for appellee (plaintiff).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant Susan Gehnert appeals from the denial of her motion to suppress evidence which was seized from her automobile.

We affirm.

## ISSUES

Gehnert presents these issues for our review:

 A. Whether or not there was a valid consent to search the motor vehicle in question:

 1. By the possessor-defendant; or

 2. By any other person.

 B. If a valid consent existed, whether or not the police exceeded the scope of the search.

 C. Whether or not there existed exigent circumstances justifying a warrantless search.

## FACTS

At around five o'clock in the morning on August 11, 1996, Gehnert, who was employed as a shift manager, arrived at Taco John's to open it for business. She called the manager at around 6:25 or 6:30 a.m. and reported that the safe did not have money in it. At approximately 6:33 a.m., Gehnert called the sheriff's department to report the theft. John Phillips, a deputy with the Laramie County sheriff's department, was dispatched to Taco John's to investigate the report. The manager, the assistant manager, and the night manager also arrived at Taco John's.

Deputy Phillips recalled that about a week earlier a similar incident had been reported from this particular Taco John's and that approximately $1,700 had been taken. He learned that Gehnert was also the person who had discovered and reported that theft. When he arrived at Taco John's, he talked with Gehnert. She told him that she discovered the money was missing when she arrived that morning and that she did not see signs of a forced entry.

Only the manager and Gehnert had keys to the building, and only they, the assistant manager, the night manager, and one other employee had access to the safe. The safe had a combination lock on the exterior and two compartments on the inside. One of the compartments required a key for access. The manager informed Deputy Phillips that only three keys existed to the key portion of the safe. One key was hidden in the office at Taco John's; one key was on the manager's key ring; and one key, which was usually at the manager's home in her china cabinet, was missing.

Deputy Phillips asked for permission to search the vehicles which were present. Gehnert stated that the car she was driving was not hers and that she was worried the person she and her fiance were buying the car from might have drugs in it. When Deputy Phillips told her that he was not worried about drugs which might be in the car, Gehnert consented to the search. After Deputy Phillips searched the passenger compartment, he asked Gehnert for the trunk key. She told him that she did not have a key and again stated that the car was not hers and that she did not want to be held responsible for anything which might be in the trunk. The manager offered to pay for a locksmith to open the truck, but Gehnert refused, reiterating that she did not want to be held responsible for what was in the trunk.

Deputy Phillips asked Gehnert for proof of insurance or documentation, such as a registration, which showed proof of ownership. When Gehnert could not produce any such documentation, Deputy Phillips informed her

that she could not legally drive the car and that it would have to remain parked until she could provide documentation showing ownership or proof of insurance.

After speaking with some of her superiors, Gehnert quit her job and walked home. She returned to Taco John's a short time later and turned in her uniform. She then got into the car and sat there for approximately thirty to forty minutes. Despite being warned a second time by Deputy Phillips that she could not legally drive the vehicle, Gehnert drove off in the car. Deputy Phillips followed Gehnert and pulled her over. At that time, Deputy Phillips called for assistance. Linda Renner, a detective with the Laramie County sheriff's department, arrived and took over the traffic stop while Deputy Phillips returned to Taco John's.

After some discussion, Gehnert agreed to accompany Detective Renner to the sheriff's department for an interview in exchange for the detective's promise not to have the car towed. At the sheriff's department, Gehnert repeatedly claimed that she did not own the car, explaining that her fiance had actually purchased it. She requested an attorney and, at that point, the interview was terminated. Detective Renner gave Gehnert a ride home.

Gehnert's fiance was at her residence when she and Detective Renner arrived. The fiance told Detective Renner that he had bought the car for $500 and that, although he was buying it for Gehnert, he was "technically" the owner of the car because no documents had been issued in Gehnert's name. He explained that the money had been paid and possession of the car had transferred but that the formal documents evidencing the sale had not been finalized.

Detective Renner asked the fiance for his permission to search the trunk of the car. He agreed to the search and signed a consent form. He accompanied Detective Renner to where the car was parked and was present when she conducted the search. Detective Renner testified that, after the locksmith opened the trunk, she observed a lot of "junk." Before moving anything, she saw money sticking out of a plastic grocery bag. She then moved a blue cloth under which she

found the two missing money bags. The bags were numbered and were labeled Taco John's. Detective Renner also found a key which she later discovered was the key that was missing from the manager's china cabinet.

Gehnert was arrested for grand larceny. She filed a motion to suppress the evidence which had been seized from the car, and the district court denied her motion. Pursuant to a negotiated plea agreement, Gehnert pleaded *nolo contendere*, reserving the right to appeal from the district court's denial of her motion to suppress. She also agreed to pay restitution to Taco John's for both thefts. Gehnert was sentenced to serve a prison term of not less than three years nor more than five years. She appeals to this Court from the denial of her motion to suppress.

## STANDARD OF REVIEW

██ We do not disturb the findings on factual issues which the district court has made in considering a motion to suppress unless the findings are clearly erroneous. *Southworth v. State*, 913 P.2d 444, 447 (Wyo. 1996). Because the district court conducts the hearing on the motion to suppress and has the opportunity to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions, we view the evidence in the light most favorable to the district court's determination. *Id.* The constitutionality of a particular search or seizure is a question of law which we review *de novo*. *Id.*

## DISCUSSION

██ In this appeal, Gehnert claims that she owned the car and that the search of the trunk was illegal because neither she nor anyone with the authority to do so consented to the search. She also contends that, if a valid consent was given, the fruits of the search should have been suppressed because the police exceeded the scope of the consent and because exigent circumstances justifying a warrantless search did not exist. The State argues that Detective Renner obtained a valid consent from Gehnert's fiance.

362

Subject to certain exceptions, warrantless searches and seizures are per se unreasonable under both the Fourth Amendment to the United States Constitution and Article 1, Section 4 of the Wyoming Constitution. *Gronski v. State*, 910 P.2d 561, 564 (Wyo.1996). Among the recognized exceptions are searches and/or seizures conducted pursuant to a valid consent. *Id.* "Whether an exception exists in a particular case is a question of fact that may be properly resolved by a preponderance of the evidence standard in the light of all attendant circumstances." *City of Laramie v. Hysong*, 808 P.2d 199, 203 (Wyo.1991). When this Court reviews questions of fact, we view the evidence in the light most favorable to the prevailing party. *Id.* The burden of proving that the circumstances of a particular case fit within an exception is with the State. *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970).

The United States Supreme Court decided a case in which the police entered an apartment and seized various drug paraphernalia with the consent of an individual who, as it turned out, did not possess actual authority to consent to a search of the premises. *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). The Supreme Court held that a warrantless search will not be held illegal when consent is obtained from a person who the police reasonably believe possesses authority to provide such consent:

As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises? *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

497 U.S. at 188–89, 110 S.Ct. at 2801.

Even though Gehnert now maintains that she owned the car and was the only person who had authority to consent to its search, during the investigation, she led Detective Renner to believe that her fiance owned the car and that she did not possess authority to consent to a search of the trunk. When Detective Renner spoke with the fiance, he told her that, although he was buying the car for Gehnert, he thought he was technically the owner because he had paid for it and Gehnert's name was not yet on the title. Detective Renner asked the fiance if she could search the vehicle, and he consented and signed a permission to search form which provided:

I, [Fiance,] have been informed by Sgt. Linda K. Renner and Detective Bruce Dexter who made proper identification as (an) authorized law enforcement officer(s) of the Laramie Co. Sheriff's Dept[.] of my CONSTITUTIONAL RIGHTS not to have a search made of the premises and property owned by me and/or under my care, custody, and control, without a search warrant.

Knowing of my lawful right to refuse to consent to such a search, I willingly give my permission to the above named officer(s) to conduct a complete search of the premises and property, including all buildings and *vehicles*, both inside and outside, of the property located at Fox Farm & Medicine Bow Ave. The above said officer(s) further has(have) my permission to take from my premises and property, any letters, papers, materials, or any other property or things which they desire as evidence for criminal prosecution in the case or cases under investigation. This written permission to search without a search warrant is given by me to the above officer(s) voluntarily and without any threats or promises of any kind, at 1312 hrs/1:12 p.m. on this 11 day of August 1996, at Fox Farm & Medicine Bow Ave.

These facts gave Detective Renner the reasonable belief that the fiance had authority to consent to the search. She, therefore, was not required to obtain a warrant before she conducted a complete search of the trunk of the vehicle.

Viewing the evidence in the light most favorable to the prevailing party, we conclude that the State satisfied its burden of proving that the search of the automobile

was justified under the consent exception to the warrant requirement. The district court's denial of Gehnert's motion to suppress the fruits of the search is, therefore,

Affirmed.