Eudaldo BURGOS–SEBEROS,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 97–329.

Supreme Court of Wyoming.

Dec. 10, 1998.

Sylvia L. Hackl, State Public Defender; and Donna D. Domonkos, Appellate Counsel, for Appellee.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Robin Sessions Cooley, Assistant Attorney General, for Appellant.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

MACY, Justice.

Appellant Eudaldo Burgos–Seberos appeals from the judgment and sentence entered after a jury convicted him of possessing more than three ounces of marihuana.

We affirm.

## ISSUES

The appellant presents the following issues, which are phrased as statements, for our review on appeal:

I: The trial court erred in denying Appellant's motion to suppress the marijuana found in his vehicle, since Appellant did not voluntarily consent to the search.

II: Appellant did not voluntarily waive his constitutional right to testify since he did not understand either the rights themselves or the concept of waiver, due to a language barrier.

## FACTS

During the early morning hours of September 1, 1996, Robert Mizel, Jr., a watch commander with the Sweetwater County sheriff's office, noticed a car driving slowly, weaving within its lane, and crossing the center line of the road. Thinking that the driver might be intoxicated, Commander Mizel stopped the vehicle and summoned Michael Crosson, a deputy sheriff, to assist in the stop. When Commander Mizel approached the vehicle, he recognized the appellant. The commander was aware that the appellant usually carried a gun in his car, and he, therefore, asked the appellant where his gun was. The appellant pointed to his legs. Commander Mizel told the appellant to exit and stand at the rear of the vehicle. He subsequently determined that the appellant was not intoxicated and told him that he was free to leave.

The appellant remained outside his car and engaged in casual conversation with Commander Mizel. At some point during the conversation, Commander Mizel asked the appellant if he could search the car, and the appellant acquiesced. During his search, Commander Mizel discovered two packages containing approximately thirty-one ounces of marihuana. He arrested the appellant and charged him with possessing more than

* Retired November 2, 1998

three ounces of marihuana. The appellant pleaded not guilty to the charge.

The appellant's trial attorney filed a motion to suppress the evidence that was seized during the search of the vehicle. After holding an evidentiary hearing, the trial court denied the *motion to suppress.* The appellant was tried by a jury in July 1997, and the jury returned a guilty verdict. The trial court entered a judgment in accordance with the jury's verdict and sentenced the appellant. The appellant subsequently perfected his appeal to the Wyoming Supreme Court.

## DISCUSSION

### A. Motion to Suppress

The appellant contends that the trial court erred by denying his motion to suppress the evidence that was seized during Commander Mizel's search of his car. The state asserts that the evidence was admissible because the appellant consented to the search. We agree that the appellant voluntarily gave the commander permission to search his car. The trial court correctly admitted the evidence that was seized during the search.

■■■ We generally do not disturb evidentiary rulings made by a trial court unless the trial court abused its discretion. *Wilson v. State,* 874 P.2d 215, 218 (Wyo.1994). In reviewing a trial court's ruling on a motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly erroneous. *Gehnert v. State,* 956 P.2d 359, 361 (Wyo.1998). We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess "the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions." *Id.* The constitutionality of a particular search or seizure is, however, a question of law that we review *de novo. Id.; Jones v. State,* 902 P.2d 686, 690 (Wyo.1995).

■■ The appellant concedes that Commander Mizel's initial detention of him was proper because it was part of a routine traffic stop. He asserts, however, that he was unlawfully detained when Commander Mizel re-

quested permission to search his car and that, consequently, he did not freely give his consent to the search. The appellant points to the following facts as being evidence that he was coerced into consenting to the search: The appellant did not return to his vehicle before Commander Mizel sought permission to conduct the search; he was not told that he could decline to give his permission for the search; two officers attended the stop; and the stop occurred late at night on a deserted side street. The appellant maintains that these coercive factors, coupled with the facts that he was not a United States citizen and that he had a less-than-perfect command of the English language, rendered his consent involuntary.

■■ The Fourth Amendment to the United States Constitution and Article 1, Section 4 of the Wyoming Constitution generally prohibit warrantless searches and seizures. *Borgwardt v. State,* 946 P.2d 805, 807 (Wyo. 1997). The rule that warrantless searches and seizures are, per se, unreasonable is, however, subject to a few exceptions. *Id.; Gehnert,* 956 P.2d at 362. Searches and seizures that are conducted pursuant to a valid consent fall within one of the recognized exceptions to the prohibition against warrantless searches and seizures. *Gehnert,* 956 P.2d at 362; *Jones,* 902 P.2d at 690.

In the course of making a routine traffic stop, a law enforcement officer may: request a driver's license and vehicle registration; run a computer check; and issue a citation. *United States v. Elliott,* 107 F.3d 810, 813 (10th Cir.1997); *United States v. Sandoval,* 29 F.3d 537, 539–40 (10th Cir.1994); *see also Wilson,* 874 P.2d at 224. Generally, the driver must be allowed to proceed without further delay once the officer determines that the driver has a valid license and is entitled to operate the vehicle. *Elliott,* 107 F.3d at 813. An officer may further question a driver, however, if the driver voluntarily consents to the additional questioning. *Id.; Sandoval,* 29 F.3d at 540. When the driver has given his voluntary consent to being questioned further, no seizure has taken place. *Elliott,* 107 F.3d at 813; *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). A consensual encounter between a

law enforcement officer and a citizen does not prompt constitutional scrutiny. *Bostick*, 501 U.S. at 434, 111 S.Ct. 2382.

■ In determining whether a warrantless search was justified by a valid consent, we inquire "into the 'voluntariness' of the consent in light of 'the totality of the circumstances'" of the particular case. *Amin v. State*, 695 P.2d 1021, 1024 (Wyo.1985). *See also Elliott*, 107 F.3d at 813–14. Some of the factors that a court may consider in determining whether the consent was voluntary include: the way the law enforcement officer phrased the request for permission to search; whether the officer told the individual that he could refuse the request; and the presence of other coercive factors. *Stamper v. State*, 662 P.2d 82, 87 (Wyo.1983). We must consider all the circumstances surrounding the encounter to determine whether a reasonable person would have felt "free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 U.S. at 436, 111 S.Ct. 2382. *See also Sandoval*, 29 F.3d at 540. No single factor is determinative when we are ascertaining whether a seizure occurred. *Sandoval*, 29 F.3d at 540.

In *Elliott*, 107 F.3d 810, the Tenth Circuit Court of Appeals analyzed the voluntariness of a driver's consent to search in the context of a routine traffic stop. In that case, a patrolman issued a warning ticket to Elliott after he stopped her for exceeding the speed limit. 107 F.3d at 812. The patrolman returned Elliott's driver's license and registration to her and asked if there was anything illegal in the trunk of her car. *Id.* Elliott responded in the negative. The patrolman requested permission to inspect the trunk, and Elliott agreed. *Id.* The patrolman discovered marihuana during his search of the trunk. 107 F.3d at 812–13.

The Tenth Circuit Court of Appeals determined that Elliott had voluntarily consented to the patrolman's search. 107 F.3d at 814.[1] In concluding that Elliott's consent was voluntary, the court stated that, although the patrolman did not inform Elliott that she was free to leave after he returned the documen-

tation to her, the patrolman's questioning was not accompanied by a "coercive show of authority." 107 F.3d at 814. The court noted that the patrolman testified that he did not lean on or touch Elliott's car, his demeanor was normal, he did not threaten Elliott or her passenger, and he did not gesture toward his holster. *Id.* The court determined that, after the patrolman returned Elliott's documentation to her, the remainder of the encounter between them was "'an ordinary consensual encounter between a private citizen and a law enforcement official.'" *Id.* (quoting *United States v. Werking*, 915 F.2d 1404, 1408 (10th Cir.1990)).

In the case at bar, Commander Mizel stopped the appellant to determine whether he was intoxicated. After Commander Mizel determined that the appellant was not intoxicated, he told him that he was free to leave. The appellant did not, however, return to his car but chose, instead, to linger outside and engage in a casual conversation with the commander. Because the appellant was not being detained and was free to leave at that time, the encounter was consensual.

Commander Mizel testified at the motion-to-suppress hearing that he subsequently asked the appellant for permission to search his vehicle. Although the commander was not sure of his exact words, he stated that he said something like: "'Would you have a problem if I searched the car?'" or "'Would it be okay with you if I searched your car[?]'" The commander testified that the appellant replied: "'Yes. I have no problem.'" Commander Mizel explained that his conversation with the appellant continued as follows:

[COMMANDER MIZEL]: When [the appellant] said, "Yes. I have no problem with it[,]" I said, "Well, I appreciate it, you know. Last time we talked, you cooperated and said I could search your car [at] any time[,"] and he said, "That's right. I have nothing to hide[."]

Commander Mizel then proceeded to search the car and discovered the marihuana.

---

**1.** The Tenth Circuit Court of Appeals did ultimately rule, however, that the patrolman exceeded the scope of Elliott's consent when he looked inside the bags that were located in the trunk. *Elliott*, 107 F.3d at 815–16.

Deputy Crosson testified at the motion hearing that the appellant did not object to Commander Mizel's search of his car. The deputy also testified that he stood five to eight feet away from the appellant during the search. No evidence was presented to show that the officers displayed their weapons, handcuffed the appellant, or used a commanding tone of voice in attaining permission to search the car. Even though two officers were present and the hour was late, the general tenor of the encounter between the appellant and the officers was one of cooperation.

Although the appellant's native language was apparently Spanish, he conversed with Commander Mizel in English, and he did not indicate, at any time, that he did not understand the commander. Additionally, the state presented evidence at the motion hearing that showed the appellant had also conversed in English during prior contacts with law enforcement officers. The trial court determined that the appellant had a sufficient command of the English language to give his consent to the search. We agree with the trial court. Despite the fact that the appellant's choice of words was not technically correct, he clearly intended to grant Commander Mizel permission to search the car.

Considering the totality of the evidence in the light most favorable to the trial court's determination, we conclude that the officers did not coerce the appellant into consenting to the search and that the appellant did, in fact, voluntarily grant his permission for Commander Mizel to search his car. The trial court did not, therefore, abuse its discretion when it denied the motion to suppress.

## B. Right to Testify

The appellant did not testify during his trial. He asserts on appeal that he did not voluntarily waive his right to testify because he did not understand "either the rights themselves or the concept of waiver, due to a language barrier." He claims that he would have testified that the marihuana did not belong to him.

The United States Constitution guarantees a criminal defendant the right to testify in his own defense. *Herdt v. State*, 891 P.2d 793, 797 (Wyo.1995); *Harris v. State*, 933 P.2d 1114, 1125 (Wyo.1997). The right to testify is a fundamental right, and it is grounded in the Due Process Clause of the Fourteenth Amendment, the Compulsory Process Clause of the Sixth Amendment, and the Fifth Amendment's privilege against self-incrimination. *Herdt*, 891 P.2d at 797; *Rock v. Arkansas*, 483 U.S. 44, 50–51, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

■ In order to succeed on appeal, an appellant must initially demonstrate that "he was denied his right to testify and that he would have offered relevant testimony if he had testified." *Harris*, 933 P.2d at 1125. *See also Sanchez v. State*, 841 P.2d 85, 88 (Wyo.1992). If an appellant satisfies his initial burden, the state has the responsibility to show that the denial of the appellant's right to testify was harmless error beyond a reasonable doubt. *Sanchez*, 841 P.2d at 88.

■ The appellant's trial attorney and the trial judge had a lengthy discussion with the appellant about his right to testify and the effect of waiving that right. The appellant was assisted by an interpreter throughout the trial and during the conference with the attorney and the judge. Although the appellant initially seemed to be confused about the differences between the trial process and the appellate process, the transcript reveals he understood that he had the option of testifying at the trial and that, if he waived the right, he could not change his mind later. The appellant steadfastly stated throughout his discussion with his counsel and the judge that he did not want to testify on his own behalf. He apparently believed that the state had not proven he was guilty of the charged crime and that it was not necessary, therefore, for him to testify.

A representative sample of the discussion between the appellant, his attorney, and the judge illustrates the appellant's adamant refusal to testify on his own behalf at the trial:

COURT: You understand that you have the right to testify if you wish?

[APPELLANT]: Yes. Yeah, Your Honor.

COURT: And you've made the decision not to testify?

[APPELLANT]: Yes.

COURT: And is that your decision?

[APPELLANT]: Yes, it's my decision.

. . . .

COURT: But as I said before, you can't decide in an hour that you want to testify after you're telling me you don't want to.

[APPELLANT]: I understand this. I understand—I understand, Your Honor. I no want to testify. I understand that I can't testify later. I can't change.

The appellant argues that he did not have sufficient comprehension of the English language to understand that he had the right to the testify or the effect of waiving that right. His argument ignores the fact that he had an interpreter available to assist him during the discussion with his attorney and the judge about his right to testify. Furthermore, the judge commented that the appellant seemed to comprehend the majority of the discussion without the interpreter's assistance. The appellant does not complain about the interpreter's performance, and he does not explain what more the trial court could have done to help him overcome his language difficulty.

We conclude that the appellant was not denied his right to testify on his own behalf. His counsel and the judge gave him every opportunity to testify. They, aided by the interpreter, took great pains to ensure that the appellant comprehended his right to testify and the consequences of waiving that right. The record reveals that the appellant understood he had the right to testify and. that he knowingly and deliberately waived that right.

Affirmed.