2002 WY 28

**Stanislaus Patrick ANDREWS,**
Appellant (Defendant),

v.

**The STATE of Wyoming,**
Appellee (Plaintiff).

**No. 99–332.**

Supreme Court of Wyoming.

* Feb. 15, 2002.

* This case was originally assigned to Justice Thomas on October 23, 2000, for the rendering of a proffered majority opinion. This case was reassigned to Chief Justice Lehman on February 5, 2001.

Sylvia Lee Hackl, Public Defender; Donna Domonkos, Appellate Counsel; Diane E. Courselle, Director, Wyoming Defender Aid Program; Gordon Ellis, Student Intern; and Casey Martin, Student Intern., Representing Appellant. Argument by Mr. Martin.

Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker, Senior Assistant Attorney General, Representing Appellee. Argument by Ms. Baker.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

LEHMAN, Chief Justice.

[¶ 1] A Sheridan County jury convicted appellant Stanislaus Patrick Andrews of two counts of burglary. Andrews complains that the State conducted illegal searches of a duffel bag and his wallet and that the trial court erred by failing to suppress the evidence seized as a result of those searches. Andrews also claims that the trial court erred by refusing to give the jury his proposed

lesser-included offense instructions and by recommending that, upon commutation or parole, the Department of Corrections require him to register as if he were a sex offender. This court concludes that the searches did not violate Andrews' constitutional rights and that he was not entitled to have the jury instructed on the lesser-included offense. Andrews' conviction is, therefore, affirmed. We do, however, modify his sentence to remove the recommendation that he be required to register as a sex offender.

### ISSUES

[¶2] Andrews presents the following issues on appeal:

[I] Was Mr. Andrews denied his right against unreasonable search and seizure, as guaranteed by the U.S. Constitution and the Wyoming Constitution, when his duffel bag was searched without a warrant and Mr. Andrews had not consented to the search nor physically abandoned the duffel bag?

[II] Was Mr. Andrews denied his right against unreasonable search and seizure as guaranteed by the U.S. Constitution and the Wyoming Constitution when his wallet was searched without a warrant, after he had placed it out of reach and was kneeling on the ground with his hands cuffed behind his back?

[III] Did the trial court commit reversible error when it refused to instruct the jury on the lesser-included charge of criminal entry for both counts of the indictment against Mr. Andrews?

[IV] Did the trial court impose an illegal sentence when it instructed the Department of Corrections that Mr. Andrews should be required to register as a sex offender as a condition of commutation or parole?

### FACTS

[¶3] On February 25, 1999, Donna Woody reported to the Sheridan County Sheriff's Department that her trailer house had been burglarized. The front door was broken, and Ms. Woody was missing $400 in cash. Ms. Woody subsequently reported that a camera, a jacket, and a black bra had also been taken in the February 25th burglary.

[¶4] On March 2, 1999, Robin Wendling reported a burglary at her trailer house, which was located in close proximity to Ms. Woody's home. The exterior doors were damaged, and there were a number of items missing from the Wendlings' home, including women's underwear, bras, a dress, a slip, a pair of shoes, nylons, and an "Outdoor Products" brand backpack. Ms. Wendling also found some articles of clothing and shoes in her bedroom which did not belong to her, including a navy blue dress, women's underwear, bras, nylons, and a pair of ladies' black pumps.

[¶5] On March 23, 1999, Ms. Woody's home was burglarized for a second time. She reported that some jewelry, various coins and paper money, and a bra were missing after the second burglary of her home. A deputy sheriff questioned Ms. Woody about whether she was missing any other items of clothing. Ms. Woody searched and discovered that she was missing a pair of black pumps and a navy blue dress. A few days later she reported that she was also missing an Oneida silverware set which had the letter "T" engraved on each piece.

[¶6] On March 26, 1999, officers met with Andrews' parents, Joyce and Gerald Willis, at the sheriff's office. Andrews had been staying at the Willises' home which was located in the same trailer park as the victims' homes. During the interview, the Willises gave the officers permission to search their home.

[¶7] Deputy Jenkins proceeded to the Willis home and knocked at the door. Andrews answered, and they conversed on the front deck. Deputy Jenkins questioned Andrews about the burglaries, but he denied any involvement in the crimes. Andrews informed Deputy Jenkins that he slept in the living room and kept his belongings in the dining room. Deputy Jenkins repeatedly asked Andrews for permission to search his belongings. Andrews finally agreed to allow Deputy Jenkins to search, on the condition that the Willises would allow the deputy to

enter the house. Andrews asked his parents, and they invited the deputy into the house.

[¶ 8] Andrews took the deputy into the dining room and handed him two duffel bags. Deputy Jenkins searched the two bags and discovered that one contained dirty laundry and the other contained clean laundry. The deputy also discovered a screwdriver, which was consistent with the shape and size of the tool used on the victims' doors to gain access to their homes, and a blue "Outdoor Products" backpack during his search of the two duffel bags.

[¶ 9] Deputy Jenkins asked Andrews about a third duffel bag which was located in the same area as the other two duffel bags. Andrews stated that the bag did not belong to him. Deputy Jenkins questioned Andrews: "Do you understand that if it's not yours you have no standing to object to me searching it?" Andrews affirmed his understanding.

[¶ 10] The deputy requested and received consent from Mr. Willis to search anything in the house that did not belong to Andrews. Deputy Jenkins opened the third duffel bag and discovered a folder which contained papers with Andrews' name. Andrews stated that those items belonged to him, but the remainder of the contents of the bag were not his. During his search of the third duffel bag, Deputy Jenkins discovered a number of items of significance to the investigation of the burglaries, including various coins meeting the description of those stolen from the Woody residence, Ms. Wendling's birth certificate, and a pair of shoe liners for women's shoes.

[¶ 11] Deputy Jenkins informed Andrews that he was under arrest. Andrews immediately removed his wallet from his back pocket and placed it on the kitchen counter directly in front of him. Deputy Jenkins handcuffed Andrews and retrieved the wallet. Andrews told the deputy that he wanted to leave his wallet at the house, but the officer opened it and discovered some silver dollars and fifty-cent pieces. The officer seized the wallet as evidence.

[¶ 12] Andrews was transported to jail. Deputy Jenkins also took the third duffel bag and the wallet and conducted a full inventory search of them, discovering more coins of the type that had been stolen from Ms. Woody's home and credit cards and a receipt containing the Wendlings' names.

[¶ 13] The State charged Andrews with two counts of burglary. Count I pertained to the February 25, 1999 burglary of the Woody home, and Count II involved the burglary of the Wendling home. Andrews moved to suppress the evidence discovered during the searches of the third duffel bag and his wallet. The trial court held a hearing, and Andrews testified at the hearing that the third duffel bag did, in fact, belong to him. The trial court denied Andrews' motion to suppress.

[¶ 14] Andrews was subsequently tried before a jury. During the trial, the State elicited testimony from an Oregon police officer, showing that Andrews had committed similar crimes in that state. He apparently broke into homes to steal items and to try on women's clothing. Ms. Woody and Ms. Wendling testified about the burglaries of their homes and the items missing after the burglaries. The defense presented proposed jury instructions on the lesser-included offense of criminal entry, but the trial court refused to give those instructions. The jury found Andrews guilty of both counts of burglary.

[¶ 15] The trial court sentenced Andrews to serve consecutive terms of imprisonment in the Wyoming State Penitentiary. The trial court also included the following statement in the Judgment and Sentence:

THE COURT RECOMMENDS to the Department of Corrections that if the Defendant should be considered for a commutation or parole, a condition of his release should require the Defendant to register with the County Sheriff where the Defendant intends to live within five days of his release from custody, as if he were a sex offender under Wyoming laws, pursuant to W.S. 7-19-302.

Andrews subsequently appealed his conviction and sentence.

## DISCUSSION

### A. Search and Seizure of Evidence

[¶ 16] Andrews challenges the searches of the third duffel bag and his wallet as being in violation of the United States and Wyoming constitutional prohibitions against unreasonable searches and seizures. He maintains, therefore, that the trial court erred when it refused to suppress the evidence seized during the search of the third duffel bag and his wallet.

> When reviewing an order denying a motion to suppress evidence, the findings of the trial court regarding the motion to suppress are binding on this Court unless clearly erroneous. *Neilson v. State,* 599 P.2d 1326, 1330 (Wyo.1979), *cert. denied,* 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980). Whether an unreasonable search or seizure occurred in violation of constitutional rights presents a question of law and is reviewed de novo. *Gronski v. State,* 910 P.2d 561, 563 (Wyo.1996).

*Vasquez v. State,* 990 P.2d 476, 480 (Wyo. 1999).

[¶ 17] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Wyoming Constitution, art. 1, § 4 grants:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

[¶ 18] Under both the United States and Wyoming constitutions, warrantless searches and seizures are per se unreasonable, except in a few specific instances. *Morris v. State,* 908 P.2d 931, 935 (Wyo.1995).

The recognized exceptions to the warrant requirement include:

> 1) search of an arrested suspect and the area within his control; 2) a search conducted while in hot pursuit of a fleeing suspect; 3) a search and/or seizure to prevent the imminent destruction of evidence; 4) a search and/or seizure of an automobile upon probable cause; 5) a search which results when an object is inadvertently in the plain view of police officers while they are where they have a right to be; 6) a search and/or seizure conducted pursuant to consent; and 7) a search which results from an entry into a dwelling in order to prevent loss of life or property.

*Dickeson v. State,* 843 P.2d 606, 610 (Wyo. 1992) (quoting *Ortega v. State,* 669 P.2d 935, 940–41 (Wyo.1983)). "Whether an exception exists in a particular case is a question of fact that may be properly resolved by a preponderance of the evidence standard in the light of all attendant circumstances." *Gehnert v. State,* 956 P.2d 359, 362 (Wyo.1998) (quoting *City of Laramie v. Hysong,* 808 P.2d 199, 203 (Wyo.1991)). The State bears the burden of proving that the circumstances of a case place it within one of the recognized exceptions to the prohibition against warrantless searches and seizures. *Gehnert,* 956 P.2d at 362; *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970).

### 1. Duffel Bag

[¶ 19] Andrews maintains that the trial court erred by denying his motion to suppress the evidence seized from the third duffel bag. The State argues that the trial court's decision was correct because Andrews did not have a reasonable expectation of privacy in the duffel bag, and the search was further justified by consent.

[¶ 20] A defendant may challenge a search as being unconstitutional only if he can demonstrate that he had a reasonable expectation of privacy in the property searched. *Putnam v. State,* 995 P.2d 632, 636 (Wyo.2000); *Dean v. State,* 865 P.2d 601, 613 (Wyo.1993) (*abrogated on other grounds by Vigil v. State,* 926 P.2d 351 (Wyo.1996)). The defendant must show "both an actual subjective expectation of privacy and a rea-

sonable expectation of privacy that society is prepared to recognize." *Dean*, 865 P.2d at 613; *Pellatz v. State*, 711 P.2d 1138, 1141 (Wyo.1986). There are four factors that courts consider to determine whether an individual possesses a reasonable expectation of privacy in the property searched:

(1) the precautions taken in order to maintain one's privacy; (2) the likely intent of the drafters of the United States and Wyoming Constitutions; (3) the property rights a claimant possesses in the invaded area; (4) the legitimacy of the individual's possession of or presence in the property which was searched or seized.

*Dean*, 865 P.2d at 613 (quoting *Pellatz*, 711 P.2d at 1141). *See also Putnam*, 995 P.2d at 636. The Tenth Circuit Court of Appeals has consistently held that a defendant abandons any expectation of privacy when he unequivocally denies ownership of the property. *See e.g., United States v. Garzon*, 119 F.3d 1446, 1449–52 (10th Cir.1997); *United States v. Jones*, 707 F.2d 1169, 1172–73 (10th Cir.), *cert. denied* 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983).

[¶ 21] In this case, Andrews repeatedly renounced ownership of the third duffel bag. When Deputy Jenkins initially questioned him about the third duffel bag, Andrews stated that it was not his. Deputy Jenkins informed Andrews that, if he was not the owner of the bag, then he did not have standing to object to the search of it. Andrews said that he understood and continued to deny ownership of the third bag. Deputy Jenkins then requested and received permission from Mr. Willis to search anything in the house that did not belong to Andrews.

[¶ 22] Deputy Jenkins opened the third duffel bag and found the folder with documents containing Andrews' name. Andrews acknowledged that the documents were his but continued to disclaim ownership of the remainder of the contents of the bag. Andrews did not attempt to limit the deputy's search or profess ownership of the bag at any time during the search.

[¶ 23] Clearly, Andrews did not take any precautions to maintain his privacy in the duffel bag. To the contrary, his words and actions demonstrated that he disavowed any

ownership or interest in the bag. The framers of the United States and Wyoming constitutions and the citizens who ratified them surely did not intend that a defendant could unequivocally renounce any interest in the property and then later claim a constitutional violation when the officer relies on the defendant's statement and searches the property. Although Andrews subsequently stated that the duffel bag was his at the suppression hearing, we conclude that he abandoned his reasonable expectation of privacy in the third duffel bag at the time of the search. He did not, therefore, have standing to challenge the constitutionality of the search of the third duffel bag.

[¶ 24] Even if we were to conclude that Andrews had standing to challenge the search of the duffel bag, we would still affirm the trial court's decision to deny the motion to suppress. The trial court ruled that the search was justified because there was a valid consent to the search. Many of the same facts we considered in ruling that Andrews abandoned his expectation of privacy in the duffel bag are also important in determining whether or not Deputy Jenkins properly relied upon the Willises' apparent authority to consent to the search of the bag. *See United States v. Langston*, 970 F.2d 692, 697–98 (10th Cir.), *cert. denied Francis v. United States*, 506 U.S. 965, 113 S.Ct. 439, 121 L.Ed.2d 358 (1992), and *cert. denied McIlroy v. United States*, 506 U.S. 979, 113 S.Ct. 479, 121 L.Ed.2d 384 (1992), and *cert. denied Ross v. United States*, 506 U.S. 986, 113 S.Ct. 495, 121 L.Ed.2d 433 (1992), and *cert. denied McIlroy v. United States*, 507 U.S. 1040, 113 S.Ct. 1872, 123 L.Ed.2d 491 (1993).

[¶ 25] *Gehnert*, 956 P.2d at 361, provides guidance in resolving the consent issue because the facts of that case are similar to those presented in the case at bar. Gehnert challenged the trial court's denial of her motion to suppress the evidence seized during a search of her car. She claimed that the search of her car was illegal because neither she nor anyone with authority consented to the search. *Id.* The State argued that the search was justified because the detective had obtained consent from Gehnert's fiancé.

*Id.* We quoted the United States Supreme Court case entitled *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) as follows:

> As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief' " that the consenting party had authority over the premises? *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

*Gehnert*, 956 P.2d at 362 (quoting *Rodriguez*, 497 U.S. at 188–89, 110 S.Ct. at 2801). *See also Jones v. State*, 902 P.2d 686, 690 (Wyo. 1995).

[¶ 26] Gehnert led the detective to believe that her fiancé owned the car and that she did not possess authority to consent to the search of the car. *Gehnert*, 956 P.2d at 361. Gehnert's fiancé told the detective that he was buying the car for her, but he was still technically the owner because he paid for the car and Gehnert's name was not yet on the title. *Id.* He then gave consent to search the car. *Id.* On appeal, Gehnert asserted that the car actually belonged to her and that she was the only person with the authority to consent to a search of it. *Id.* We ruled that the search was valid because the officers reasonably believed that Gehnert's fiancé had the authority to consent to it. 956 P.2d at 362–63.

[¶ 27] In the case at bar, the Willises gave the officers permission to search their home when they were interviewed at the sheriff's office, and Mr. Willis reaffirmed his consent to search while Deputy Jenkins was at their home. The Willises were the owners of the residence and, therefore, had the authority to consent to the search of their home and belongings. *See Jones*, 902 P.2d at 690.

[¶ 28] Andrews repeatedly denied any ownership or interest in the duffel bag, even after Deputy Jenkins explained that if he denied ownership of the property, he did not have standing to object to the search. Considering the facts available to Deputy Jenkins at the time, it was reasonable for him to rely on the Willises' apparent authority to consent to the search of the third duffel bag. The trial court correctly denied Andrews' motion to suppress.

### 2. Wallet

[¶ 29] Andrews also argues that the trial court erred by refusing to suppress the evidence seized from his wallet. He claims that the search violated the United States and Wyoming constitutional provisions, prohibiting unreasonable searches and seizures. The State argues that the search was justified because it was conducted incident to his lawful arrest.

[¶ 30] One of the exceptions to the warrant requirement is a search conducted incident to a lawful arrest.[1] *Vasquez v. State*, 990 P.2d 476, 480 (Wyo.1999). The test under the United States Constitution for a valid search incident to an arrest was articulated by the United States Supreme Court in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, *reh. denied* 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969). Under the *Chimel* ruling, law enforcement officials are allowed to search the area which is within the immediate control of the arrested person. *Vasquez*, 990 P.2d at 480. This court quoted *Chimel* in *Roose v. State*, 759 P.2d 478, 482 (Wyo.1988) as follows:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. ***In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.*** And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must,

---

1. Andrews does not argue that Deputy Jenkins acted illegally when he arrested him. We will not, therefore, analyze the legality of his arrest in resolving this issue.

of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. *There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.*

*Roose,* 759 P.2d at 482 (quoting *Chimel,* 395 U.S. at 762–63, 89 S.Ct. at 2040) (emphasis added).

[¶ 31] Andrews also advances an argument based specifically upon the Wyoming Constitution. He claims that this court's decision in *Vasquez,* established a more rigorous test for searches incident to arrest. In *Vasquez,* we examined and compared the protections secured by the United States and Wyoming constitutions concerning searches of automobiles and the containers found within automobiles when suspects are arrested. 990 P.2d at 482–89. This court held that the Wyoming Constitution offers broader protection than the United States Constitution. *Vasquez,* 990 P.2d at 488–89. After reviewing earlier Wyoming Supreme Court decisions, we stated:

These past decisions establish that [Wyoming Constitution] Article 1, § 4 allows searches incident to arrest and can be said to allow automobile searches because arrestees had possession of it, and the arrest authorizes law enforcement to search it for evidence related to the crime. The provision requires, however, that searches be reasonable under all of the circumstances.

*Vasquez,* 990 P.2d at 488 (citation omitted). We continued by stating that searches incident to arrest which are performed for the permissible reasons of locating weapons or evidence related to the crime are reasonable. *Vasquez,* 990 P.2d at 488–89.

[¶ 32] In this case, Deputy Jenkins told Andrews he was under arrest, and Andrews removed the wallet from his pocket and laid it on the kitchen counter directly in front of him. Consequently, at the time when Andrews was informed he was under arrest, the wallet was still on his person. Ms. Woody had reported that cash and coins were stolen from her home. Such items could, of course, be concealed in a wallet and easily lost or destroyed. It was, therefore, reasonable and appropriate for the officer to seize the wallet and search it for weapons and/or evidence.

[¶ 33] The fact that, after being placed under arrest, Andrews placed the wallet on the kitchen counter is irrelevant to the validity of the search and seizure. The wallet was obviously still within Andrews' immediate area. We agree with the trial court's observations on this matter:

THE COURT: ... In this case the wallet clearly was on the person of the Defendant. His attempt to distance himself from the wallet does not preclude the officer from searching it incident to the arrest.

The trial court correctly denied Andrews' motion to suppress the evidence seized from his wallet.

**B.  Jury Instructions**

[¶ 34] Andrews contends that the trial court erred when it refused to instruct the jury on the lesser-included offense of criminal entry for both counts against him. The State argues that the trial court properly refused to give Andrews' proposed lesser-included jury instructions because they were not supported by the evidence presented at the trial.

[¶ 35] The Wyoming Supreme Court reviews the trial court's refusal of proposed lesser-included offense instructions by applying the following test:

The trial judge must first determine if all the elements of the lesser offense are found within the greater; and, if so, is there some evidence that would rationally permit the jury to find the accused guilty of the lesser and not guilty of the greater offense. If such evidence is present, the instruction should be given.

*Sanders v. State,* 7 P.3d 891, 894 (Wyo.), *cert. denied Sanders v. Wyoming,* 531 U.S. 1024, 121 S.Ct. 594, 148 L.Ed.2d 508 (2000) (quoting *State v. Keffer,* 860 P.2d 1118, 1140 (Wyo. 1993) (Cardine, J., concurring)). *See also Paramo v. State,* 896 P.2d 1342, 1344 (Wyo.

1995); *Eatherton v. State*, 761 P.2d 91, 95 (Wyo.1988).

[¶ 36] The parties agree that the elements of the lesser offense of criminal entry [2] are found within the greater offense of burglary.[3] They disagree, however, about whether the evidence presented at trial supported the lesser-included instructions. Andrews was entitled to have the jury instructed on criminal entry only if there was some evidence presented at the trial which would have permitted the jury to rationally acquit him of burglary and convict him of criminal entry. *Sanders*, 7 P.3d at 894. The element which differentiates burglary from criminal entry is the intent to commit larceny or a felony within the area wrongfully entered. *Collins v. State*, 854 P.2d 688, 698 (Wyo. 1993). In this case the burglary instructions given to the jury stated that the State was required to prove beyond a reasonable doubt that Andrews entered the victims' homes with the intent to commit larceny.

[¶ 37] The evidence upon which Andrews relies is the fact that some items of clothing he removed from the Woody home were found in the Wendling home. Because of that, Andrews claims he did not harbor the requisite intent to permanently deprive Ms. Woody of her property. We do not believe that evidence would rationally permit the jury to find the accused guilty of the lesser offense of breaking and entering and not guilty of burglary. Support for this conclusion can be found not only in the fact that the clothes were removed from the Woody home, but that in at least seven prior burglaries committed by Andrews in the state of Oregon, in addition to removing items of value as he did in this case, he would dress in the clothing of women victims, sometimes replacing the clothing before leaving.

[¶ 38] The jury could not have rationally acquitted Andrews of the greater offense of burglary and convicted him of the lesser offense of criminal entry on either count. The trial court, therefore, properly denied Andrews' request for the lesser-included jury instructions.

## C. Sentence

[¶ 39] Andrews maintains that the sentence imposed against him was illegal because the trial court included a recommendation to the Department of Correction that, if Andrews were considered for commutation or parole, he be required to register with the appropriate sheriff's office as if he were a sex offender. The State seems to concede that the trial court did not have the legal authority to impose a registration requirement on Andrews but argues that the sentence was not *per se* illegal because it was simply a recommendation to the Department of Corrections. The State does advise, however, it would not object if this court deleted that portion of Andrews' sentence.

[¶ 40] Wyo. Stat. Ann. §§ 7–19–301 *et seq.* require sex offenders to register with the appropriate entity and provide penalties for failure to comply. At the time of Andrews' offense, "sex offender" was defined as "a person who has been convicted of a sex offense in which the victim was less than sixteen (16) years of age and the offender was at least four (4) years older than the victim." § 7–19–301(a)(viii) (Michie 1997). "Sex offense" was defined as "felony offenses limited to sexual assault under W.S. 6–2–302 through 6–2–304, attempted sexual assault, conspiracy to commit sexual assault, incest under W.S. 6–4–402, or indecent liberties under W.S. 14–3–105." § 7–19–301(a)(v) (Michie 1997). Andrews' burglary convictions do not

---

**2.** Criminal entry is prohibited by Wyo. Stat. Ann. § 6–3–302 (LexisNexis 2001), which states in relevant part:

(a) A person is guilty of criminal entry if, without authority, he knowingly enters a building, occupied structure, vehicle or cargo portion of a truck or trailer, or a separately secured or occupied portion of those enclosures.

**3.** Wyo. Stat. Ann. § 6–3–301 (LexisNexis 2001) defines the crime of burglary. That statutes states in pertinent part:

(a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein.

Larceny is defined as follows:

(a) A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny.

Wyo. Stat. Ann. § 6–2–402(a) (LexisNexis 2001).

fall within the statutory definition of "sex offense."

[¶ 41] We, therefore, agree with Andrews that the registration requirement for sex offenders does not apply in this case. Because the State has agreed to revision of Andrews' sentence, we need not determine whether, in light of the fact that the trial court's statement was only a recommendation, the sentence was actually illegal. We will simply strike that portion of Andrews' sentence.

## CONCLUSION

[¶ 42] The deputy did not violate Andrews' constitutional rights when he searched the duffel bag and wallet. Andrews did not have standing to challenge the search of the duffel bag, and, furthermore, the search of the duffel bag was justified by consent. The search of the wallet was a legitimate search pursuant to a lawful arrest. In addition, the trial court properly refused to instruct the jury on the lesser-included offense of criminal entry because the trial evidence did not support the instructions. Finally, we hold that Andrews' sentence should be revised to delete the trial court's recommendation that he be required, upon commutation or parole, to register as a sex offender.

[¶ 43] Affirmed, as modified.