2003 WY 118

**Frank GUZMAN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 02–178.

Supreme Court of Wyoming.

Sept. 18, 2003.

Representing Appellant: Nicholas Carter and Carol Seeger of Carter Law Office, Gillette, WY. Argument by Mr. Carter.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Laura J. Jackson and Deborah R. Hochhalter, Student Interns. Argument by Ms. Hochhalter.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] Appellant Frank Guzman entered a conditional plea of guilty to possession of methamphetamine in violation of Wyo. Stat. Ann. § 35–7–1031(c) (LexisNexis 2003). Guzman now asserts on appeal that evidence derived from a search of his vehicle should have been suppressed. Finding that the search of Guzman's vehicle was proper, we affirm.

### ISSUES

[¶ 2] Guzman states the issues on appeal as follows:

A. Did the trial court err in denying Appellant's motion to suppress evidence based on its finding that the search of the Appellant's automobile was consensual?

B. Was the search and seizure of the automobile reasonable under the constitu-

tions of the United States and State of Wyoming?

The State rephrases the issues as:

I. Did the trial court err in denying Appellant's motion to suppress evidence on the ground that Appellant consented to the search of the red Chevrolet Tahoe?

II. Apart from the question of consent, was the warrantless search of the red Chevrolet Tahoe unreasonable under the constitutions of the United States and the State of Wyoming?

### FACTS

[¶ 3] During the week of the Sturgis motorcycle rally, on August 8, 2001, State Troopers Clements and Tortorici were traveling westbound when they observed Guzman traveling eastbound on his motorcycle without the headlight illuminated. Noticing another patrol car following the motorcycle at some distance, Troopers Clements and Tortorici requested by radio that these officers handle the matter.

[¶ 4] Troopers Minard and Mann, in the second patrol car, stopped the motorcycle driven by Guzman. When Guzman was pulled over, a red Chevrolet Tahoe pulling a trailer and another motorcycle stopped to wait for him. Guzman was asked to produce his driver's license, registration, and insurance documentation. He was noticed to be wearing a t-shirt that had numerous marijuana leaves pictured on it with a related sayings. Guzman reached into his jacket, apparently to produce some of the documentation, but accidentally pulled out rolling papers which he quickly returned to his pocket. He then advised the troopers that the requested documentation was in the Tahoe.

[¶ 5] After looking in the Tahoe, Guzman was only able to produce an identification card. Upon running Guzman's information through the dispatch center, Trooper Mann learned that Guzman's driver's license was suspended. In addition, he learned that the motorcycle was not titled in Guzman's name. Guzman explained that the motorcycle belonged to his uncle and that he was going to sell it at the rally. In addition, Trooper Mann observed that the title to the motorcy-

cle was improperly filled out, and the motorcycle had license plates that had been issued to a prior owner, not Guzman's uncle. Guzman also advised the troopers that the Tahoe belonged to his sister.

[¶ 6] Meanwhile, Troopers Clements and Tortorici pulled up behind the first patrol car to assist with the stop. They spoke with Orlando Garcia, the driver of the second motorcycle, and Michael Daniels, a hitchhiker and driver of the Tahoe. Both stated that they were traveling with Guzman to the rally. Daniels did not have a valid driver's license. Guzman and Daniels were then issued citations. Guzman stated that he would post a cash bond for both citations so that formal detention of Daniels and himself would be unnecessary. Each of the men were advised that neither Guzman nor Daniels could drive a vehicle. Garcia, the only one of the three that possessed a valid driver's license, agreed to place the motorcycles on the trailer and drive the Tahoe. To do so, Garcia pushed his motorcycle near the trailer. He then took off his vest and placed it on the rear seat of the Tahoe.

[¶ 7] During these events, Trooper Chatfield and his drug-sniffing dog also arrived at the scene. Trooper Clements told Trooper Chatfield to stick around, as they may need the dog's assistance because some suspicious things had been noticed. Trooper Chatfield then walked his dog around the motorcycle driven by Garcia and asked everyone to move back from the motorcycle for safety reasons. The dog alerted at the back end of Garcia's motorcycle and when asked if the officers could search his motorcycle, Garcia agreed, denying that any illegal drugs were on the motorcycle. Trooper Chatfield searched the motorcycle and found methamphetamine in two locations.

[¶ 8] After Garcia was arrested, the officers felt that they had probable cause to search the Tahoe because Garcia had, in their presence, left personal belongings in the vehicle. Guzman and Daniels confirmed that Garcia had previously been in the vehicle, and Garcia had other possessions in the Tahoe. When asked if the officers could search the vehicle, Guzman and Daniels gave permission and advised that no illegal drugs were in the vehicle unless there were drugs belonging to Garcia.

[¶ 9] The search of the Tahoe began with the officers removing items from the vehicle and placing them in piles depending on whose possessions they were. The drug-sniffing dog then sniffed these possessions and moved to the Tahoe. While in the Tahoe near the driver's seat, the dog again alerted. Trooper Chatfield searched the area and discovered methamphetamine, cocaine, and marijuana hidden under the dashboard. Guzman was then arrested.

[¶ 10] After being charged, Guzman filed a motion to suppress the evidence found in the Tahoe. Upon hearing, the district court denied the motion. Guzman then entered a conditional plea of guilty to possession of methamphetamine, reserving the right to appeal the district court's ruling on his motion to suppress. This appeal followed.

### STANDARD OF REVIEW

[¶ 11] We recently recognized in *Hughes v. State*, 2003 WY 35, ¶ 10, 65 P.3d 378, ¶ 10 (Wyo.2003):

When reviewing a trial court's ruling on a motion to suppress, we apply the following standard:

We generally do not disturb evidentiary rulings made by a trial court unless the trial court abused its discretion. *Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994). In reviewing a trial court's ruling on a motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly erroneous. *Gehnert v. State*, 956 P.2d 359, 361 (Wyo.1998). We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess "the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions." *Id.* The constitutionality of a particular search or seizure is, however, a question of law that we review *de novo*. *Id.; Jones v. State*, 902 P.2d 686, 690 (Wyo.1995).

Martindale v. State, 2001 WY 52, ¶ 9, 24 P.3d 1138, ¶ 9 (Wyo.2001) (quoting Putnam v. State, 995 P.2d 632, 635 (Wyo. 2000)).

## DISCUSSION

### Consent to Search

■ [¶ 12] Guzman challenges the search of his vehicle claiming that the district court's finding that the search was consensual was clearly erroneous based on the evidence presented. Specifically, Guzman argues that based on the testimony of three troopers given during his motion to suppress hearing, it is unclear that consent was given.

[¶ 13] We noted in Hughes v. State, at ¶ 11:

Both the Fourth Amendment to the United States Constitution and Article 1, Section 4 of the Wyoming Constitution provide citizens with protection from unreasonable searches and seizures. However, "[n]either the federal nor the state constitution forbids all searches and seizures; rather, they prohibit unreasonable searches and seizures." Lancaster v. State, 2002 WY 45, ¶ 61, 43 P.3d 80, ¶ 61 (Wyo.2002) (citing Guerra v. State, 897 P.2d 447, 452 (Wyo. 1995)). We have stated that under both constitutions, warrantless searches and seizures are per se unreasonable, with a few specifically established exceptions. Morris v. State, 908 P.2d 931, 935 (Wyo.1995). These specific exceptions include:

1) search of an arrested suspect and the area within his control; 2) a search conducted while in hot pursuit of a fleeing suspect; 3) a search and/or seizure to prevent the imminent destruction of evidence; 4) a search and/or seizure of an automobile upon probable cause; 5) a search which results when an object is inadvertently in the plain view of police officers while they are where they have a right to be; 6) a search and/or seizure conducted pursuant to consent; and 7) a search which results from an entry into a dwelling in order to prevent loss of life or property.

Andrews v. State, 2002 WY 28, ¶ 18, 40 P.3d 708, ¶ 18 (Wyo.2002) (quoting Dickeson v. State, 843 P.2d 606, 610 (Wyo.1992)).

[¶ 14] At the suppression hearing, the district court heard testimony from Guzman and three of the five troopers who were on the scene. In doing so, the district court assessed the credibility of the witnesses, weighed the evidence, and found that consent was given to search the automobile. Specifically, the district court indicated in its decision letter: "Essentially, Mr. Guzman's statement to the troopers was that if there were any drugs in the Tahoe, they belonged to Mr. Garcia and the troopers could search it if they wanted to."

[¶ 15] Not surprisingly, Guzman denied ever giving his consent for the vehicle to be searched. The record indicates that Trooper Chatfield did not have any discussions with Guzman. Therefore, he could not have obtained Guzman's consent to search the automobile. When questioned about what he had heard concerning Guzman's alleged consent to search his vehicle, Trooper Clements indicated that he did not recall any conversations regarding this topic. Nevertheless, Trooper Clements also explained that even though he was present during this time frame, he was in charge of taking care of Garcia.

[¶ 16] Trooper Mann, however, testified that upon becoming aware that the officers intended to search the vehicle because Garcia had possessions within the vehicle, Guzman clearly indicated that a search would be fine because there were no drugs in the vehicle. Upon further questioning by counsel and by the district court, Officer Mann reiterated that Guzman authorized the search of the vehicle and stated that there were no drugs in the vehicle unless they were in Garcia's possessions. The district court found such testimony to support a finding of consent to search the vehicle and, therefore, denied Guzman's motion to suppress.

[¶ 17] Upon our review of the record, we hold the district court's decision is supported by the evidence received at the hearing. As indicated previously, when reviewing a trial court's ruling on a motion to suppress, 1) we will not interfere with the trial court's findings of fact unless the findings are clearly

erroneous, and 2) we must view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions. *Hughes,* at ¶ 10.

[¶ 18] Guzman argues that the testimony of Trooper Mann, standing by itself, does not support a finding that Guzman consented to the search of his vehicle. We do not agree. Such positive testimony can and, in this instance, did provide a sufficient basis for a finding of consent to search. Moreover, we do not agree with Guzman's inference that each and every officer who was at the scene must be shown to have heard the authorization to search before it can be concluded that consent was given. The only requirement is that consent is established by reliable and sufficient evidence. It is the district court's function to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions. In denying Guzman's motion to suppress, the district court found Trooper Mann's testimony more reliable and credible. Simply stated, Guzman has failed to show that the district court's finding was clearly erroneous.

[¶ 19] Guzman would also have us believe that the totality of the circumstances shows that any consent obtained cannot be considered voluntary and would, therefore, not be legal consent. In particular, Guzman argues that there were between four to five officers present at the scene, with three patrol cars and two police dogs.[1] He then posits that such a showing of force weighs against the conclusion that Guzman voluntarily gave his consent but was rather forced to "submit" or "acquiesce" to the search. This argument is refuted by the fact that Trooper Mann's testimony makes it clear that Guzman affirmatively gave his consent to search the vehicle because, according to him, there were no drugs in the vehicle unless they belonged to Garcia. Guzman's re-

sponse was not a mere submission to the will of the officers, as he did not merely shrug or give an indefinite response. Rather, Guzman affirmatively consented to the search of the Tahoe. In addition, the troopers did not at any time threaten Guzman or all "gang up" on him in any way. As indicated earlier, the additional officers were primarily responsible for the other persons at the scene.

[¶ 20] Furthermore, given the fact that there were two motorcycles, an automobile, and three citizens somewhat spread out at the scene, the use of five troopers and a drug-sniffing dog is not, in itself, unreasonable to assure officer safety. Moreover, the fact that the officers had earlier concluded that they had probable cause to search the Tahoe does not establish that the consent given by Guzman before the search was involuntary.

[¶ 21] Finally, Guzman argues that if he gave voluntary consent, that consent was limited to the officers searching Garcia's possessions not the entire vehicle. The verbal communication of Guzman, however, demonstrates that consent was given to search the Tahoe itself, and not just Garcia's possessions which were in the vehicle. Again, Trooper Mann affirmatively testified that when one of the officers indicated that they would need to search the vehicle since Garcia had possessions in that vehicle and had earlier been in the vehicle, Guzman positively indicated that the search of the vehicle could be conducted because there were no drugs in the vehicle unless they belonged to Garcia.

### Probable Cause

[¶ 22] In his last issue on appeal, Guzman argues that the troopers did not have probable cause to search his vehicle and, therefore, the search was unreasonable. Having concluded that sufficient evidence existed for the district court to conclude that voluntary consent was given by Guzman to search the Tahoe, this issue is rendered moot and we, therefore, do not address it.

---

1. The latter portion of the videotape of the occurrence apparently shows the presence of a second dog. However, testimony at the suppression hearing indicates that only one drug-sniffing police dog was present.

## CONCLUSION

[¶ 23]  As indicated above, we find no error in the proceedings.  We, therefore, affirm the judgment and sentence of the district court.