2007 WY 182

**Roy Dean PIERCE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 05–145.**

Supreme Court of Wyoming.

Nov. 15, 2007.

⊸394.5(4)

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Marion Yoder, Senior Assistant Appellate Counsel; and Ryan R. Roden, Senior Assistant Appellate Counsel. Argument by Ms. Yoder.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric A. Johnson, Director, Jonathan Haidsiak, Student Director, and Orintha Karns, Student Intern, of the Prosecution Assistance Program. Argument by Ms. Karns.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] A Casper police officer arrested Roy Dean Pierce (the appellant) for two traffic violations and proceeded to search the vehicle the appellant had been occupying prior to the arrest. The appellant later filed a motion in the district court to suppress the drug-related evidence that the officer seized from the vehicle. The district court denied the motion. On appeal, the appellant claims that the officer's search violated both the Wyoming Constitution and the United States Constitution. We agree that the search violated the Wyoming Constitution and, accordingly, reverse and remand this matter to the district court for further proceedings consistent with this opinion.

* Chief Justice at time of oral argument.

## ISSUES

[¶ 2]   1.   Whether the search at issue in the instant case violated Article 1, Section 4 of the Wyoming Constitution?

2.   Whether the search at issue in the instant case violated the Fourth Amendment to the United States Constitution?

## FACTS

[¶ 3]   Casper police officer Wesley Gudahl was patrolling a local park at 5:19 a.m. on September 4, 2004, when he observed the appellant sitting in a parked four-door Subaru station wagon.   The appellant was "laying back in the [driver's] seat" with one foot on the dashboard and when the officer illuminated the vehicle, the appellant "raised his head and then flopped it back."   Concerned for the appellant's welfare and because the park was closed,[1] the officer knocked on the appellant's window.   The appellant rolled down the window and the two engaged in what the officer characterized as a "friendly" conversation.   The appellant, who was cooperative and did not appear to be in distress, indicated that he had just been "kicked out" of his residence and was moving to another location—the vehicle was indeed full of boxes, luggage and "this and that."   He also stated that he had driven that morning to a convenience store for a newspaper and coffee, and was waiting in the park until daylight so as not to disturb the occupants of his new residence.

[¶ 4]   Officer Gudahl asked the appellant for his driver's license and proof of motor vehicle liability insurance.   The appellant produced a Montana driver's license and volunteered that the license was suspended.   He added that he did not have proof of insurance because he was in the process of transferring the insurance from another vehicle to the Subaru.   A dispatcher confirmed that the appellant's license was suspended, and Officer Gudahl decided to arrest the appellant for driving under suspension[2] and for failing to maintain liability insurance.

[¶ 5]   While Officer Gudahl waited for a backup officer to arrive and assist him with the appellant's arrest, the officer checked the Subaru's temporary registration tag because the appellant had indicated that he owned the vehicle.   The registration tag stated that the vehicle was registered to a Ms. Currie.   The officer asked the appellant about this, and the appellant responded that a Mr. and Mrs. Ritchie owned the vehicle.   When Officer Gudahl explained that neither of them was the individual named on the temporary registration tag, the appellant agreed that Ms. Currie owned the vehicle, stated that the Ritchies were her parents, and claimed that he had permission to use the vehicle.[3]

---

1.   The park is apparently closed, pursuant to a city ordinance, between 12:00 a.m. and 6:00 a.m.

2.   Such arrests are, according to the officer, a "common" police practice in Casper.

3.   Officer Gudahl requested that a dispatcher contact Ms. Currie, and at some point received confirmation that she owned the Subaru and had allowed the appellant to use it.   The officers did not impound the Subaru, but allowed Ms. Currie to retrieve it from the scene.   She arrived some time after the arresting officer and the appellant had left.

Officer Gudahl testified at the suppression hearing that it was his policy to take a "quick look through" a vehicle for dangerous items such as weapons before releasing the vehicle to another party.   The officer characterized this as a "community safety issue."   We decline to consider herein whether "community safety" may have provided a reasonable basis for searching the vehicle.   The record is vague as to the origin, and nature, of this policy, as well as the timing of the officer's search relative to when Ms. Currie retrieved the vehicle.   The focus of the suppression hearing was the applicability of the search-incident-to-arrest exception (the officer testified that his search of the Subaru was "incident to the [appellant's] arrest" and the district court stated that the "real issue presented [was] whether there was a legal or illegal search incident to arrest").   To the extent that a public safety concern might have been relevant, we note that the prosecutor ultimately did not argue the community safety issue as a basis to justify the search during his closing argument at the suppression hearing, and the district court did not rely on the community safety issue in denying the suppression motion.   On appeal, the State briefly referred to the officer's testimony in this regard while reciting the facts in its appellate brief, and also briefly mentioned the issue at oral argument.   However, these references were never accompanied by any cogent argument or citation to pertinent legal authority.   Simply stated, the developed facts of this case are not sufficient for

[¶ 6] Meanwhile, the backup officer arrived. Officer Gudahl asked the appellant to exit the Subaru, the appellant complied, and the officer handcuffed the appellant. Officer Gudahl conducted a "pat down" search of the appellant's person, which search produced no additional evidence or weapons. The backup officer placed the appellant in the back of Officer Gudahl's patrol car, where the appellant remained while Officer Gudahl searched the Subaru.

[¶ 7] Officer Gudahl proceeded to search the area of the Subaru in which the appellant had been sitting, including under and behind the driver's seat and between the driver's seat and the front passenger seat.[4] The officer noticed an open black bag on the floorboard behind the driver's seat. Just inside the top of the bag was a partially-closed eyeglasses case containing several syringes[5]—the syringes were "coming out from the glasses case" and were visible once the officer opened the rear driver's side door without manipulating the case.[6] When the officer searched the nylon bag, he discovered evidence of drug use—three baggies containing suspected methamphetamine residue, syringes containing suspected liquid methamphetamine, a spoon, and several "roach clips" (paraphernalia used to smoke drugs "to make sure that you get it all without burning your fingers"). The officer then searched other containers in the vehicle and found items with suspected methamphetamine residue, a glass cylinder pipe containing suspected marijuana, phone numbers and names of individuals later determined to be involved in the drug trade, and a diary with a recipe and ingredients list for manufacturing methamphetamine.[7]

[¶ 8] The appellant was charged with three felonies: 1) possession of powder or crystalline methamphetamine, third or subsequent offense, in violation of Wyo. Stat. Ann. § 35–7–1031(c)(i) (LexisNexis 2007); 2) possession of liquid methamphetamine, third or subsequent offense, in violation of Wyo. Stat. Ann. § 35–7–1031(c)(i); and 3) possession of a quantity of liquid methamphetamine exceeding .3 grams, in violation of Wyo. Stat. Ann. § 35–7–1031(c)(ii).[8] He filed a motion

this Court to engage in an analysis of when community safety concerns would justify an officer's search of an arrestee's car that will be left at the scene, rather than impounded. Furthermore, while the inventory search of an impounded vehicle has been recognized as reasonable by the United States Supreme Court, and by this Court, the law is not nearly so clear in regard to non-impounded vehicles. *See Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Johnson v. State*, 2006 WY 79, ¶¶ 9–10, 137 P.3d 903, 905–06 (Wyo.2006); Jack E. Call, *Defining the Community Caretaking Function*, HeinOnline—21 Policing Int'l J. Police Strat. & Mgmt. 269 (1998). The most we can say is that, just as the inventory search concept has been used to create an exception to the constitutional warrant requirement, thereby allowing the search of an impounded vehicle, some reasonable articulable suspicion of a community safety issue, or the advancement of the officer's community caretaker function must be identified to create a similar exception to the warrant requirement, allowing the search of a non-impounded vehicle.

4. According to the officer, these areas were "easily" within arm's reach of the appellant as he sat in the Subaru.

5. The officer could see part of the bag when the appellant opened the Subaru's front driver's side door to exit the vehicle. However, it was not until the officer opened the rear driver's side door that he actually saw the syringes. The officer testified that he opened the rear door to get a better look at the bag so that he did not need to "stretch around" the driver's seat and "contort [himself]."

6. Officer Gudahl "immediately" recognized that syringes are associated with methamphetamine use and according to his training, syringes also can be dangerous weapons.

7. The appellant acknowledged to the backup officer that everything in the vehicle was his and that he wanted the contents released to the individual who retrieved the vehicle.

8. Wyo. Stat. Ann. § 35–7–1031(c) (LexisNexis 2007) provides, in pertinent part, as follows:

(c) It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act. Any person who violates this subsection:
(i) And has in his possession a controlled substance in the amount set forth in this paragraph is guilty of a misdemeanor.... Any person convicted for a third or subse-

to suppress the evidence Officer Gudahl seized from the Subaru because the officer's warrantless search of the vehicle violated both the Wyoming Constitution and the United States Constitution. After a hearing, the district court denied the motion. The appellant then entered a conditional guilty plea [9] to one felony count of possession of methamphetamine, third or subsequent offense, and the State moved to dismiss the other two charges. The district court sentenced the appellant to imprisonment for twenty-four to thirty-six months, and this appeal followed.

## STANDARD OF REVIEW

[¶ 9] Our standard of review is as follows:

"Findings on factual issues made by the district court considering a motion to suppress are not disturbed on appeal unless they are clearly erroneous. *Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994). Since the district court conducts the hearing on the motion to suppress and has the opportunity to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions, evidence is viewed in the light most favorable to the district court's determination. *Id.* The issue of law, whether an unreasonable search or seizure has occurred in violation of constitutional rights, is reviewed de novo. *Id.; Brown v. State*, 944 P.2d 1168, 1170–71 (Wyo.1997)."

*Grant v. State*, 2004 WY 45, ¶ 10, 88 P.3d 1016, 1018 (Wyo.2004) (quoting *McChesney v. State*, 988 P.2d 1071, 1074 (Wyo.1999)).

## DISCUSSION

[¶ 10] The appellant asserts that Officer Gudahl's warrantless, non-consensual search of the Subaru incident to the appellant's arrest [10] violated both the Wyoming Constitution and the United States Constitution. We have said that neither the Wyoming Constitution, nor the federal constitution,

forbids **all** searches and seizures; rather, they prohibit **unreasonable** searches and seizures. *Guerra v. State*, 897 P.2d 447, 452 (Wyo.1995). Warrantless searches and seizures are unreasonable *per se*, with but a few exceptions. *Gehnert v. State*, 956 P.2d 359, 362 (Wyo.1998); *Morris v. State*, 908 P.2d 931, 935 (Wyo.1995)....

*Lancaster v. State*, 2002 WY 45, ¶ 61, 43 P.3d 80, 102–03 (Wyo.2002) (emphasis in original). We are concerned in the instant appeal with the applicability of the search-incident-to-arrest exception. "The question of whether an exception applies to support a search without a warrant is dependent upon all of the facts and circumstances viewed in their entirety" and if "a defendant properly objects to or moves for suppression of evidence seized, the State bears the burden of proving that one of the exceptions applies." *Moulton v. State*, 2006 WY 152, ¶ 16, 148 P.3d 38, 43 (Wyo. 2006) (citations omitted).

quent offense under this paragraph, including convictions for violations of similar laws in other jurisdictions, shall be imprisoned for a term not more than five (5) years, fined not more than five thousand dollars ($5,000.00), or both. For purposes of this paragraph, the amounts of a controlled substance are as follows:
.....

(B) For a controlled substance in liquid form, no more than three-tenths (3/10) of a gram;

(C) For a controlled substance in powder or crystalline form, no more than three (3) grams;
.....

(ii) And has in his possession methamphetamine ... in an amount greater than those set forth in paragraph (c)(i) of this section, is guilty of a felony punishable by imprisonment for not more than seven (7) years, a fine of not more than fifteen thousand dollars ($15,000.00), or both;
.....

9. The appellant reserved the right to seek this Court's review of the district court's denial of his suppression motion pursuant to W.R.Cr.P. 11(a)(2), which rule provides that with "the approval of the court and the consent of the attorney for the state, a defendant may enter a conditional plea of guilty ... reserving in writing the right, on appeal from the judgment, to seek review of the adverse determination of any specified pretrial motion," and that a "defendant who prevails on appeal shall be allowed to withdraw the plea."

10. The lawfulness of the officer's initial contact with the appellant, of the appellant's arrest, and of the officer's search of the appellant's person incident to that arrest, are not at issue in this appeal.

### Wyoming Constitution[11]

[¶ 11]   Citing *Vasquez v. State*, 990 P.2d 476 (Wyo.1999), and *O'Boyle v. State*, 2005 WY 83, 117 P.3d 401 (Wyo.2005), the appellant contends that Article 1, Section 4 of the Wyoming Constitution [12] offers greater protection than its federal counterpart and requires that any search of the Subaru incident to the appellant's arrest must not only have been incident to a lawful arrest, but also reasonable under all the circumstances. The appellant emphasizes the following circumstances in claiming that the search at issue in the instant case was unreasonable: 1) there was no evidence that the appellant was under the influence of alcohol or drugs; 2) there was no reasonable possibility that additional evidence of the crimes for which the appellant was arrested, or any other crime, remained in the vehicle; 3) the officer's "pat down" search of the appellant's person revealed no weapons or evidence of criminal activity; 4) the officer did not testify that he was concerned for his safety and there was no basis for the officer to believe that the appellant was armed or that there were weapons in the vehicle; 5) there were no passengers in the vehicle; and 6) the appellant was arrested outside the vehicle and remained handcuffed in a patrol car prior to, and during, the search. The appellant concludes that these circumstances did not provide the officer a reasonable justification to search the Subaru for evidence or to prevent the appellant "from reaching weapons or concealing or destroying evidence."

[¶ 12]   The State would limit our consideration to whether Officer Gudahl acted reasonably in opening the Subaru's rear door to examine the area behind the driver's seat, which area was within the appellant's immediate control prior to the arrest. Citing *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and generally the dangers inherent in any arrest, the premise of the State's argument is that every arrest "always" provides a reasonable justification for an officer to search the area within an arrestee's immediate control, including the area of the Subaru that Officer Gudahl initially searched in this case. The officer's search was therefore reasonable because it had not exceeded the area within the appellant's immediate control when the officer discovered the syringes in plain view. The State adds that it was "of no significance" that the appellant remained handcuffed in a patrol car during the search because "safety interests justify permitting officers to search after removing the suspect."

[¶ 13]   We have said that our state constitution provides protection of individual rights separate and independent from the protection afforded by the U.S. Constitution. The U.S. Supreme Court has made it clear in that states at a minimum must comply with its interpretations of the federal constitution. *Mapp v. Ohio*, 367 U.S. 643, 654–55, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961). However, it also has made clear that states may separately interpret and apply their own constitutions. *Id.* In interpreting their own constitutions, states generally have focused upon whether their particular state constitution provides *greater* protection than the federal constitution. *Mogard v. City of Laramie*, 2001 WY 88, ¶ 5, 32 P.3d 313, ¶ 5 (Wyo. 2001). However, using federal law as a guide, states may also conclude that the scope of the protection provided by their constitution is the same as and parallel to that provided by the federal constitution. . . .

. . . .

... [T]his Court historically has interpreted Wyoming's search and seizure provision as forbidding unreasonable searches and seizures and has said the question of whether a search or seizure was reasonable was one of law to be decided from all

---

11.   The State does not question the adequacy of the independent state constitutional analysis the appellant presented to the district court, or to this Court on appeal.

12.   Article 1, Section 4 of the Wyoming Constitution provides as follows:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

the circumstances. [*Vasquez,* 990 P.2d at 484.] Beyond this general reasonableness standard, and the warrant requirement specifically mentioned in the text of article 1, § 4, this Court has not extensively considered the scope of Wyoming's provision independent of the protection guaranteed by the Fourth Amendment. Rather, this Court, like the majority of other state courts, generally has decided search and seizure cases on the basis of federal Fourth Amendment law....

In *Vasquez,* however, we performed a separate state constitutional analysis and concluded that article 1, § 4 provided greater protection than the Fourth Amendment under the particular facts presented. Specifically, we held the vehicle search at issue was permissible: 1) under the Fourth Amendment because it was incident to a lawful arrest; and 2) under article 1, § 4 because it was incident to a lawful arrest *and was reasonable under all the circumstances in that law enforcement had a reasonable suspicion that one of the occupants was armed.* It was this requirement that the search be reasonable under all the circumstances as we said in *Vasquez* that distinguished Wyoming constitutional law from Fourth Amendment law.

*O'Boyle,* ¶¶ 23–26, 117 P.3d at 408–09 (emphasis in original). That being the case, we have eschewed bright-line rules in considering non-consensual vehicle searches conducted incident to an arrest, and instead favor an approach "that requires a search be reasonable under all of the circumstances as determined by the judiciary, in light of the historical intent of our [state's] search and seizure provision." *Vasquez,* 990 P.2d at 489. *See also O'Boyle,* ¶ 30, 117 P.3d at 410 (we apply "a narrower standard, one maintaining the requirement that a search be reasonable under all the circumstances" and in the context of "a vehicle search incident to an arrest ... Wyoming's search and seizure provision provide[s] greater protection than the federal provision.")

[¶ 14] We cannot say that the search at issue in the instant case was reasonable. The general

rationale for permitting searches incident to arrest is to prevent the arrestee from reaching weapons or concealing or destroying evidence. *See* [*Commonwealth v.*] *White,* [543 Pa. 45,] 669 A.2d [896,] 905 [(1995)]. A search incident to arrest under our state provision for these reasons is reasonable. The inherent mobility of automobiles in combination with officer and public safety concerns created when a driver or a passenger is arrested are exigent circumstances weighing in favor of not restricting the scope, timing, or intensity of such a search.

*Vasquez,* 990 P.2d at 489. Such evidentiary and safety concerns are not articulable from the totality of the circumstances in the instant case, particularly considering that:

1. The officer testified that he did not observe any signs that the appellant was under the influence of alcohol or drugs.

2. There was no reasonable possibility that evidence of the crimes for which the appellant was arrested remained in the vehicle. There also was no evidence indicating that the appellant had committed any other crime.

3. The officer's "pat down" search of the appellant's person did not uncover anything of evidentiary value.

4. The State does not attempt in its appellate brief to justify the search for evidentiary reasons.

5. Our analysis of the circumstances does not reveal any reasonable basis for the officer to believe the appellant was armed or that there were weapons in the vehicle. The appellant was arrested for driving under suspension and failing to maintain liability insurance. The officer's "pat down" search of the appellant's person did not uncover any weapons.

6. There were no passengers in the vehicle, two officers were at the scene, and the officers and the appellant had already left the scene by the time the vehicle's owner retrieved the vehicle.

7. The appellant was handcuffed and placed in a patrol car immediately prior to, and during, the search. Handcuffs are by no

means foolproof (*see Mackrill v. State*, 2004 WY 129, ¶¶ 19–21, 100 P.3d 361, 368–69 (Wyo.2004)), but we must view this fact in light of all of the other facts in this case.

8. The appellant did not exhibit any furtive or suspicious activity, particularly with respect to the contents of vehicle.

9. The State does not contend in its appellate brief that considerations such as the time of day, the setting, the temporary registration tag issue, etc. contributed to any kind of safety concern in this case. The officer did not refer to any specific officer safety concerns he had that would have arisen prior to the time he initiated the search.

10. The officer admittedly had no other information about the appellant "as opposed to any other citizen." By the officer's own account, he and the appellant engaged in a friendly conversation, the appellant was honest about his suspended license, and the appellant seemingly offered a reasonable explanation for his presence at the park (the vehicle's contents, to the extent they were visible to the officer, would seem objectively to support the appellant's explanation).

11. The appellant cooperated with the officer and did not resist arrest or become combative with the officer.

This is not to say, of course, that *any* of these considerations might not be viewed differently if it were to arise in the context of different facts.

[¶ 15] It was the State's burden to prove that the search-incident-to-arrest exception applied, and the applicability of such an exception is "dependent upon all of the facts and circumstances viewed in their entirety." *Moulton*, ¶ 16, 148 P.3d at 43. The State's appellate analysis instead focused almost exclusively on the fact that the appellant was arrested and advocates for a bright-line approach similar to the approach that we rejected in *Vasquez*. Our state constitution requires more in that regard—the search must not only be incident to a lawful arrest, but also reasonable under the circumstances. In other words, we must be able to find a reasonable basis, articulable from the totality of the circumstances in each case, to justify such a search.

[¶ 16] We add that the instant case is clearly distinguishable from other cases in which we have upheld non-consensual searches under Article 1, Section 4 of the Wyoming Constitution. For example, the following excerpt from *Clark v. State*, 2006 WY 88, ¶¶ 14–15, 138 P.3d 677, 680–81 (Wyo. 2006), aptly summarizes our analysis of the circumstances present in *Vasquez*:

> [A]n officer stopped a vehicle after receiving a report it was weaving on the highway and almost hit another vehicle. The officer confirmed the driver was intoxicated and arrested him for driving under the influence of alcohol. Other officers called to the scene noticed empty cartridges and shell casings in the bed and passenger compartment of the pickup truck. They removed the passengers and searched the vehicle, finding cocaine in a fuse box next to the steering wheel.

> Mr. Vasquez argued the search was unconstitutional under the Fourth Amendment to the United States Constitution and Article 1, § 4 of the Wyoming Constitution. We held the search was reasonable under Article 1, § 4 because it was incident to a lawful arrest and law enforcement had reason to be concerned one of the occupants was armed. We also reaffirmed prior case law holding that Article 1, § 4 allows reasonable vehicle searches incident to arrest for evidence related to the crime and to prevent the arrestee from reaching weapons or concealing or destroying evidence. *Vasquez*, 990 P.2d at 488–89. Specifically, we held "the arrest justified a search of the passenger compartment of the vehicle and all containers in it, open or closed, locked or unlocked, for evidence related to the crime and for weapons or contraband which presented an officer or a public safety concern." We concluded:

>> The shell casings and the presence of two adult passengers presented an officer safety and a public safety concern which permitted a search incident to arrest although Vasquez's arrest had been accomplished and he was secure inside a patrol car. It appears from the record that the passengers were also arrested

and, although we are not told, it would seem their arrest created the need for the officers to secure the vehicle if left on the roadside.

*Vasquez*, 990 P.2d at 489.

[¶ 17] In *Andrews v. State*, 2002 WY 28, ¶¶ 6–7, 11, 40 P.3d 708, 710–11 (Wyo.2002), a sheriff's deputy arrested Andrews for burglary and when the deputy informed Andrews that he was under arrest, Andrews "immediately removed his wallet from his back pocket and placed it on the kitchen counter directly in front of him." The deputy "handcuffed Andrews and retrieved the wallet. Andrews told the deputy that he wanted to leave his wallet at the house, but the officer opened it and discovered some silver dollars and fifty-cent pieces. The officer seized the wallet as evidence." *Id.*, ¶ 11, 40 P.3d at 711.

[¶ 18] Andrews claimed that the deputy's search of the wallet violated both the federal constitution and Article 1, Section 4 of the Wyoming Constitution. *Id.*, ¶ 29, 40 P.3d at 714. Our federal constitutional analysis was as follows:

> Under the *Chimel* ruling, law enforcement officials are allowed to search the area which is within the immediate control of the arrested person. *Vasquez*, 990 P.2d at 480. This court quoted *Chimel* in *Roose v. State*, 759 P.2d 478, 482 (Wyo.1988) as follows:
>
>> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. *In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.* And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who

is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. *There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.*

*Id.*, ¶ 30, 40 P.3d at 714–15 (emphasis in original; citations omitted). After summarizing our holding in *Vasquez*, we then analyzed the reasonableness of the search of Andrews' wallet under Article 1, Section 4:

> In this case, Deputy Jenkins told Andrews he was under arrest, and Andrews removed the wallet from his pocket and laid it on the kitchen counter directly in front of him. Consequently, at the time when Andrews was informed he was under arrest, the wallet was still on his person. [The victim] had reported that cash and coins were stolen from her home. Such items could, of course, be concealed in a wallet and easily lost or destroyed. It was, therefore, reasonable and appropriate for the officer to seize the wallet and search it for weapons and/or evidence.
>
> The fact that, after being placed under arrest, Andrews placed the wallet on the kitchen counter is irrelevant to the validity of the search and seizure. The wallet was obviously still within Andrews' immediate area. We agree with the trial court's observations on this matter:
>
>> THE COURT: ... In this case the wallet clearly was on the person of the Defendant. His attempt to distance himself from the wallet does not preclude the officer from searching it incident to the arrest.
>
> The trial court correctly denied Andrews' motion to suppress the evidence seized from his wallet.

*Id.*, ¶¶ 32–33, 40 P.3d at 715.[13]

[¶ 19] The facts in *Cotton v. State*, 2005 WY 115, ¶¶ 4–5, 119 P.3d 931, 932 (Wyo. 2005), were essentially as follows:

---

**13.** The State claims that we "affirmatively applied" *Chimel* under Article 1, Section 4 of the Wyoming Constitution in *Andrews* and we are therefore bound to do the same in the instant

On June 22, 2003, Deputy David Stevens of the Laramie County Sheriff's Department stopped the vehicle Mr. Cotton was driving in a residential neighborhood of Cheyenne, Wyoming for having a cracked windshield. Deputy Stevens asked to see Mr. Cotton's driver's license and discovered it was suspended. Because Mr. Cotton was from out of state, Deputy Stevens placed him under arrest for driving with a suspended license. There was a passenger riding with Mr. Cotton and so, for safety reasons, Deputy Stevens called for back-up assistance. Deputy Poteet arrived at the scene a few minutes later.

After placing Mr. Cotton under arrest, Deputy Stevens handcuffed him and performed a pat-down search. As the deputy was escorting him to the patrol car, Mr. Cotton asked his passenger to retrieve a shirt from the back of his vehicle and take it home with him. Deputy Poteet retrieved the shirt from the vehicle and before handing it to the passenger, checked it for weapons. Inside the shirt pocket, he discovered a baggie containing crack cocaine. The deputies then searched Mr. Cotton's vehicle and found a small scale inside the trunk. They also searched Mr. Cotton and found $123 in cash.

We then considered these circumstances under Article 1, Section 4:

> Deputy Stevens testified that he called for backup assistance after discovering Mr. Cotton's license was suspended because he was making an arrest and there was another person in the vehicle. He stated:
>
>> The reasoning being officer safety; we call another officer when we make an arrest for the simple fact he did have another person with him in the passenger seat. I was outnumbered in that respect so I had to call somebody else while I had that arrest with Mr. Cotton.
>
> Deputy Stevens further testified that he arrested Mr. Cotton, handcuffed him, patted him down for safety and was placing him in the patrol car when Mr. Cotton

asked the passenger to get the shirt and take it home with him. Deputy Stevens testified at that point: "we wanted to make sure nothing was in the shirt as far as a weapon that would jeopardize officer safety." Deputy Poteet retrieved the shirt, patted it down and felt something in the pocket. He removed a clear plastic bag containing five or six rocks of what appeared to be crack cocaine. Altogether, the rocks measured approximately three inches in diameter and weighed 4.5 grams.

> Under all of the circumstances, we conclude the search of the shirt pocket was reasonable. Mr. Cotton had been arrested. The presence of an adult passenger presented a safety concern causing the arresting deputy to call for back-up assistance. When Mr. Cotton asked the passenger to retrieve the shirt, the assisting deputy was justified on the basis of safety concerns in retrieving the shirt himself rather than allowing the passenger to go back to the vehicle. He was further justified in checking the shirt for weapons before handing it to the passenger. Once he discovered there was something in the pocket of some substance (measuring approximately three inches in diameter and weighing 4.5 grams), he also was justified in removing it from the pocket before handing the shirt to the passenger.

*Cotton,* ¶¶ 21–22, 119 P.3d at 935–36.

[¶ 20] We similarly considered the reasonableness of a search in *Clark,* ¶¶ 19–21, 138 P.3d at 682–83:

> The record ... shows, after a valid stop for an equipment failure, Officer Cornwell discovered Mr. Clark was driving with a suspended license, had a prior outstanding ticket in Wyoming for the same offense and had a warrant out for his arrest in Colorado for failing to appear on a domestic violence charge. Officer Cornwell recognized Mr. Kobbe [ (the passenger) ] from a prior arrest in Powell related to methamphetamine. In addition, the officer ob-

---

case. However, *Andrews* involved: 1) the search of an item that was on Andrews' person at the time of his arrest; 2) an item that Andrews then removed from his person in the officer's presence, but that clearly still remained within An-

drews' immediate area; 3) a reasonable possibility that, under the circumstances, Andrews could still gain possession of the wallet; and 4) an evidentiary basis for the officer to search the wallet.

served suspicious behavior on the part of both individuals, including Mr. Kobbe disappearing from view momentarily inside the vehicle. He also detected the odor of alcohol coming from the vehicle and saw the taped Nintendo box behind the driver's seat and did not know what might be inside. Given the suspicious circumstances and the presence of an adult passenger, he called for back-up assistance.

When the search commenced, Mr. Clark had been lawfully arrested. By the time Officer Cornwell began to assist with the search, he knew Mr. Kobbe was intoxicated. He also knew the Nintendo box had been partially covered by someone inside the vehicle after he first observed it. Although Mr. Kobbe was out of the vehicle, he was not under arrest and was standing next to the vehicle.

Officer Cornwell testified the vehicle was a two-door Ford Probe and he and Officer Martinez searched the driver's side floorboard console area, passenger side floorboard seat area and directly behind the driver and passenger seat incident to Mr. Clark's arrest. When the search commenced, the Nintendo box was located behind the driver's seat. Officer Martinez picked it up and placed it on the center console where Officer Cornwell found it during his search of the passenger side of the vehicle. The presence of an intoxicated, adult passenger presented an officer safety concern which permitted a search incident to arrest although Mr. Clark had already been arrested and was secure inside the patrol car. The presence of a box the size of a Nintendo, the contents of which were unknown and which had been partially covered up by someone inside the vehicle after the initial stop, presented further officer safety concerns justifying the warrantless search incident to arrest. Paraphrasing what we said in *Vasquez*, Mr. Clark's arrest justified a search of the passenger compartment of the vehicle and all containers in it, open or closed, locked

or unlocked, for weapons or contraband which presented an officer safety concern. Having carefully reviewed *de novo* the evidence before us in light of our precedent, we hold the search was incident to a lawful arrest and reasonable under all the circumstances because of officer safety concerns.

[¶ 21] The concerns articulable from the totality of the circumstances in these cases are not present in the instant case.

### United States Constitution

■ [¶ 22] The appellant also argues that the search at issue in this case violated the Fourth Amendment to the United States Constitution.[14] However, we conclude that the search clearly falls within the purview of *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), which case "established ... that arrest justifies the search of a [vehicle's] passenger compartment, including any open or closed container in it, without consideration of the privacy interest involved." *O'Boyle*, ¶ 30, 117 P.3d at 410.

[¶ 23] One final comment seems appropriate. This opinion is founded in Article I, Section 4 of the Wyoming Constitution, particularly as interpreted and applied in *O'Boyle* and *Vasquez, passim*. The dissent, to the contrary, relies almost entirely upon United States Supreme Court cases and the Fourth Amendment to the United States Constitution. It is little more than a plea for the adoption of a rule that officer safety always trumps a reasonableness analysis under the totality of the circumstances when an arrest is made, and it is a barely disguised plea that we abandon *O'Boyle* and *Vasquez* and adopt the *Belton* bright-line rule that we rejected therein. And finally, *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), cited twice in the dissenting opinion in support of the concept of searching a vehicle incident to the arrest of its driver, involved a search of the arrestee's person, not his vehicle.

---

14. The Fourth Amendment to the United States Constitution provides as follows:

    The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

## CONCLUSION

[¶ 24] Having found that the search in the instant case violated Article 1, Section 4 of the Wyoming Constitution, we reverse the denial of the appellant's suppression motion and remand this matter to the district court for further proceedings consistent with this opinion.

VOIGT, C.J., delivers the opinion of the Court. BURKE, J., files a dissenting opinion; and HILL, J., files a dissenting opinion.

BURKE, Justice, dissenting.

[¶ 25] I respectfully dissent, and would affirm the district court's decision that this was a valid search incident to arrest and reasonable under all of the circumstances. In my view, the majority reaches the opposite result by misapplying the standard of review, marginalizing officer safety as a factor to be weighed in the analysis, and overlooking the most meaningful difference between the state and federal standards.

[¶ 26] As part of its standard of review, the majority recites that "evidence is viewed in the light most favorable to the district court's determination." It then proceeds to view the evidence in Mr. Pierce's favor. As just one example, the majority cites this factor in finding the search invalid:

By the officer's own account, he and the appellant engaged in a friendly conversation, the appellant was honest about his suspended license, and the appellant seemingly offered a reasonable explanation for his presence at the park.

The record presents a rather different picture. Mr. Pierce was in a municipal park in violation of a city ordinance. When the officer initiated contact, Mr. Pierce "raised his head and then flopped it back," a reaction that caused the officer concern for Mr. Pierce's welfare. Mr. Pierce admitted that his license was suspended, but attempted to mislead the officer by saying that he "did not have proof of insurance as it was in the process of getting transferred from his old car to the car he was driving now." He also provided the officer with inaccurate and misleading information concerning ownership of the vehicle. The majority portrays Mr. Pierce as a model citizen, when the facts of record, particularly viewed in the light most favorable to the district court's ruling, suggest otherwise.

[¶ 27] It is the majority's weighing of officer safety, or rather its failure to weigh it properly in determining reasonableness, that I find most disturbing. There is evidence in the record indicating that Mr. Pierce's arrest raised safety concerns. For example, the officer called for backup and waited for it to arrive before arresting Mr. Pierce. Upon making the arrest, the officer placed Mr. Pierce in handcuffs and removed him to the police vehicle before initiating the search. In addition, the officer testified that leaving an unattended vehicle in a public park raised concerns about community safety.

[¶ 28] The majority appears to ignore this evidence, and instead relies on the fact that the officer who arrested Mr. Pierce did not express concern for his safety. However, "the test of officer safety is objective rather than subjective, and therefore the officer need not personally be in fear" to justify a search. *United States v. Dennison*, 410 F.3d 1203, 1213 (10th Cir.2005). "[I]n judging the legality of a search, courts must apply an objective standard and will not be bound by the subjective beliefs of the arresting officer." *United States v. Jenkins*, 496 F.2d 57, 72 (2d Cir.1974) (internal punctuation omitted). *See also Brown v. State*, 738 P.2d 1092, 1099 (Wyo.1987) (Thomas, J., dissenting). Whether or not the officer who arrested Mr. Pierce subjectively feared for his safety, the objective fact remains that he took routine safety precautions when arresting Mr. Pierce.

[¶ 29] The majority also seems to adopt Mr. Pierce's suggestion that officer safety concerns arise only when the nature of the crime makes it reasonable to suspect the presence of weapons. However, it fails to provide any guidance to help law enforcement officials determine which arrests present safety risks and which do not. I agree with the United States Supreme Court, which has said it is not inclined, "on the basis of what seems to us to be a rather speculative judgment," to base the authority to

search incident to arrest on the nature of the crime. *United States v. Robinson,* 414 U.S. 218, 234, 94 S.Ct. 467, 476, 38 L.Ed.2d 427, 440 (1973).[15] As a practical matter, when making an arrest, a police officer should not be required to make fine distinctions about which crimes imply the presence of weapons and which do not.

[¶ 30] Arrests are inherently dangerous. "Every arrest must be presumed to present a risk of danger to the arresting officer." *Washington v. Chrisman,* 455 U.S. 1, 7, 102 S.Ct. 812, 817, 70 L.Ed.2d 778, 785 (1982). For that reason, the "constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search." *Michigan v. DeFillippo,* 443 U.S. 31, 35, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343, 348 (1979); *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969).

[¶ 31] It is well established that an officer is allowed to search an arrested person and the area within his or her immediate control. *Clark v. State,* 2006 WY 88, ¶ 16, 138 P.3d 677, 681 (Wyo.2006); *Guzman v. State,* 2003 WY 118, ¶ 13, 76 P.3d 825, 828 (Wyo.2003). *Vasquez v. State,* 990 P.2d 476 (Wyo.1999) says that such a search is allowed when there is reason to suspect the presence of evidence or weapons, but it does not say that a search is allowed *only* when there is evidence that weapons are present. Although it would seem obvious that every arrest involves officer safety concerns, it will be the rare case indeed when the officer will find "empty gun cartridges or casings in the bed of the truck." *Id.* at 480. There is no dispute that the officer validly arrested Mr. Pierce. Under our prior precedent, the officer was then allowed to search Mr. Pierce and the area within his immediate control at the time of the arrest. Surely, the officer must be allowed to conduct the search in a safe manner.

[¶ 32] Under the majority opinion, however, the officer apparently lost the authority to search Mr. Pierce's vehicle because he removed Mr. Pierce from the vehicle, handcuffed him, and placed him in the patrol car. The majority does not indicate at what point the officer lost the authority to conduct the search. This fails to provide sufficient guidance to allow law enforcement officials to determine when a search is unconstitutional, and thereby "threaten[s] the stability that law enforcement expects and needs from the rules set forth by this Court governing officer conduct." *Bailey v. State,* 12 P.3d 173, 179 (Wyo.2000). Must an officer, trying to comply with the majority's ruling, conduct the search while the arrested person is still in the vehicle, before he is placed in handcuffs? It does not "make sense to prescribe a constitutional test that is entirely at odds with safe and sensible police procedures." *United States v. Fleming,* 677 F.2d 602, 607 (7th Cir.1982); *United States v. Turner,* 926 F.2d 883, 887–88 (9th Cir.1991).

[¶ 33] The fundamental purpose underlying the exclusionary rule is prevention of police misconduct. As we recently observed:

> The purpose of the exclusionary rule is to deter law enforcement from obtaining evidence through illegal means. However, the public has a vital interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth. [A]pplication of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served. The penalties visited upon the Government, and in turn upon the public because its officers have violated the law, must bear some relation to the purposes which the law is to serve.

*Hall v. State,* 2007 WY 138, ¶ 11, 166 P.3d 875, 878 (Wyo.2007) (internal citations and quotation marks omitted). Considering the actions of the officer who arrested Mr. Pierce, it is unclear what conduct the majority seeks to discourage. The officer acted in

---

**15.** "Although we are not bound by the Fourth Amendment decisions of the United States Supreme Court in this case, we may certainly follow its lead when we find its reasoning persuasive." *Fertig v. State,* 2006 WY 148, ¶ 17, 146 P.3d 492, 497 (Wyo.2006) (quoting *Almada v. State,* 994 P.2d 299, 309 (Wyo.1999)).

accordance with established procedure, with due regard for the safety of himself, the other officers, the community, and Mr. Pierce. To the extent his safety precautions were routine police procedure, that underscores the point: routine police procedure treats every arrest as dangerous.

[¶ 34] A search incident to arrest may be lawfully performed only when a valid custodial arrest is made, and an arrest may be made only with probable cause. "The search incident to arrest is reasonable ... because the privacy interest protected by that constitutional guarantee is legitimately abated by the fact of arrest." *Robinson,* 414 U.S. at 237–38, 94 S.Ct. at 477. Further, under the Wyoming constitutional standard, as under the federal standard, a search incident to arrest must be conducted "as a contemporaneous incident of that arrest." *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981). Moreover, it is important to note that the occupant of a vehicle has a relatively low expectation of privacy. *Vasquez,* 990 P.2d at 488. Wyoming law has long recognized that automobiles are less protected from warrantless searches than homes. *State v. Kelly,* 38 Wyo. 455, 268 P. 571, 572 (1928). Together, these factors establish that an officer's authority to perform a vehicle search incident to arrest does not unduly impinge on individual rights.

[¶ 35] To be reasonable under all of the circumstances, a search incident to arrest must be reasonable in scope. *See Vasquez,* 990 P.2d at 489. It is at this step in our analysis that the Wyoming standard varies most significantly from the bright-line *Belton* rule. Under *Belton,* an officer may search the entire passenger compartment of a vehicle, including containers, open or closed, without further justification. Under *Vasquez,* the officers were allowed to search the entire passenger compartment, including the inside of a closed fuse box, based on reasonable suspicion that weapons or evidence were present. If the officer in Mr. Pierce's case had conducted such an intrusive search, it could well have violated Article 1, § 4 of the Wyoming Constitution. However, the officer in Mr. Pierce's case searched only the driver's seat and its vicinity, that area within Mr.

Pierce's immediate control at the time of his arrest. He opened the back door of the vehicle only to complete the search of the area immediately behind the driver's seat. There, he saw the syringes in plain view. The district court analyzed the evidence presented and concluded that the search was reasonable, stating:

> Additionally, I think I agree with [defense counsel] that under the *Vasquez* case, we need to look at a reasonableness type standard. I think you articulated that very well.
>
> It seemed to me from the testimony that I heard from this officer, who was very straightforward in my opinion, was that it was extremely reasonable for him to take a look at the interior of the vehicle. I presume that he opened the front door. And I think also in viewing the compartment area of the vehicle, his opening the back door was completely reasonable. He described it as a four-door vehicle, so there would be four doors into the compartment. And I would think opening any of the doors to undertake the search incident to arrest would be reasonable. And I think it would especially have application in this case given the area that he looked was right behind the front seat. And clearly that would be within the wingspan area or the area of reach from the area the defendant was sitting when he made contact with law enforcement.

I agree with the district court.

[¶ 36] The majority concedes that the search was valid under the federal standard established in *Belton,* 453 U.S. 454, 101 S.Ct. 2860. We rejected the *Belton* bright-line rule in *Vasquez,* 990 P.2d 476, but with the reassurance that "[i]t will not be common that a search of an automobile incident to arrest will violate" the Wyoming Constitution, "and our decision should not raise new concerns for law enforcement." *Id.* at 489. In spite of this reassurance, the decision reached by the majority significantly alters the landscape for law enforcement. There is nothing uncommon about the officer's actions in this case. There is nothing in the record to suggest that the procedures used were

anything other than routine. Simply put, this is not one of those rare cases that would justify different results under federal and state constitutional analyses.

HILL, Justice, dissenting.

[¶ 37] I agree with the material part of Justice Burke's dissent. However, I write separately to emphasize my concern that the narrow slot we carved out in the *Vasquez* case appears to be widened by the majority decision in this case, for reasons that I find unconvincing. Vasquez himself did not reap the benefit of the *Vasquez* decision, so Pierce is the first to be accorded the enhanced protections it provides to Wyoming citizens. Given all of the facts and circumstances detailed in both the majority opinion and the dissent, albeit with slightly different spins, I am convinced that the district court's decision to deny Pierce's motion to suppress was correct and consequently I would affirm both that decision, as well as the district court's judgment and sentence.