2008 WY 25

**Steven Ace SAM, Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

No. S–07–0057.

Supreme Court of Wyoming.

March 6, 2008.

Representing Appellant: Tina N. Kerin, Appellate Counsel, Wyoming State Public Defender Program.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Elizabeth C. Gagen, Chief Deputy Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, Steven Ace Sam (Sam), entered a plea of guilty to possession of a controlled substance with intent to deliver. That plea was part of a negotiated plea bargain wherein he reserved his right to challenge the constitutionality of the search of his motor vehicle, which uncovered the evidence that incriminated him. The district court conducted a hearing in response to Sam's motion to suppress the fruits of that search, which the State justified on the basis that it was conducted incident to his arrest for violation of a protection order and for driving while his license was suspended. The search at issue did not uncover any evidence associated with the crimes for which he was arrested, but rather evidence of drug crimes. The district court concluded that the search was proper under the governing law and, thus, did not suppress the incriminating evidence. We hold that the district court did not err in declining to suppress the evidence at issue and, therefore, we affirm.

## ISSUES

[¶ 2] Sam raises this issue:

Did the district court err in denying [Sam's] motion to suppress evidence, as his vehicle was improperly searched "incident to arrest" in violation of the Wyoming Constitution?

The State identifies the issue in only slightly different words:

Did the district court properly deny [Sam's] motion to suppress upon concluding officers were entitled to search under the front seat of his vehicle incident to his arrest?

## FACTS AND PROCEEDINGS

[¶ 3] Sam presented his issue to the district court properly supported by cogent argument and pertinent authority. The State, of course, had the initial burden to demonstrate that the search was reasonable because it was conducted without the benefit of a warrant. The State called the arresting officer, Police Sergeant Jonathan Christopher Beck of the Cody Police Department, as the only witness in support of the search at issue here.

[¶ 4] The district court denied the motion to suppress in a terse order that included no written findings. At the conclusion of the suppression hearing, the district court made these findings:

I find that as of the date of the arrest Officer Beck knew that the protection or-

der had been issued, and he had received evidence that the defendant had violated the order. He had also received a report that the defendant's driver's license was suspended. He then recognized the defendant and the vehicle he was in.

Accordingly, the defendant was legally placed under arrest for driving while under suspension and for violation of the protective order. The officer then was entitled to conduct a search incident to the arrest, including a search of the defendant and the vehicle of which he had been an occupant. Pursuant to that search of the vehicle, the evidence in question was seized. Therefore, the search was legal and the motion to suppress is denied.

[¶ 5] The facts that were available to the district court, and which support the factual prong of the issue we are called upon to resolve, can be found in Sergeant Beck's testimony at the suppression hearing.

[¶ 6] On August 2, 2005, Sergeant Beck of the Cody Police Department became aware of an order of protection in favor of Candie Hinton, as well as her daughter Casandra Hinton. That order protected them from Sam and, inter alia, prohibited Sam from calling them on the phone. Although the protection order does not appear in the record, the parties do not dispute that this was one of the terms of the protection order. Beck was aware that the Hintons had complained of phone harassment by Sam on August 2–3, 2005. On August 5, 2005, Sergeant Beck received information that Sam had violated the terms of the protection order again by calling Candie Hinton on her cell phone. Based upon this information, Beck was preparing to seek a warrant for Sam's arrest. Sergeant Beck was also aware that he was authorized to make a warrantless arrest if he was aware of a specific instance of a violation of the protection order.

[¶ 7] However, before Beck was able to obtain an arrest warrant, he was contacted by the Crisis Intervention office and told that both Candie and Casandra Hinton were there and that Sam had been calling Casandra's cell phone. Candie also advised that while she was at the Crisis Intervention office, she had seen Sam drive by. Candie was able to describe that car and its occupants. While the Hintons were waiting for Sergeant Beck to arrive, the Hintons observed Sam drive by the Crisis Intervention office again. Sergeant Beck related in his testimony:

I went to Crisis Intervention, and I spoke to Casandra and to Candie Hinton myself, where I reviewed the protection order a second time. And they related the same story to me, that Mr. Sam had called Casandra, that she—I mean that they had lived with Mr. Sam for several years before the break-up and the domestic violence protection order. Casandra related to me that she knew Mr. Sam's voice and that she had spoke to him on the phone, and that he continued to call her, and that they both recognized the female passenger to be a Kayla, that it definitely was Steve Sam that had followed them to Crisis Intervention, and that he had drove by a second time.

After these initial confrontations, Sergeant Beck stayed in the area of Crisis Intervention and he observed Sam drive by for a third time. At that point Beck stopped Sam:

When I stopped him, I walked up to the vehicle, and I explained to him why I had stopped him, confirmed who he was, to be Mr. Steve Sam. And I asked him at that point in time if he had made phone calls to Casandra, and he said yes. I also asked him if he would confirm his cell phone number, which he did. I don't recall the exact number now. It was a Montana number. But if I remember correctly, he said it was 861–ouch, which was what was on my initial report from when he had been calling Candie on the 2nd and the 3rd of August.

[¶ 8] Based on Sam's statements that he had called both Candie and Casandra, Sergeant Beck concluded that Sam had violated the protection order, and he arrested him on that basis. Beck also determined that Sam was driving with a suspended driver's license, and he was arrested for that reason as well. Incident to the arrest for violation of the protection order, Officer Beck searched Sam's car for evidence relating to his violation of the protection order. The search of that car produced methamphetamine and

crystal methamphetamine in significant quantities, although it did not produce any evidence of Sam's violation of the protection order.

## STANDARD OF REVIEW

 [¶ 9] In this instance, the district court conducted a hearing and took evidence concerning the search and seizure at issue. In reviewing a trial court's ruling on a motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly erroneous. We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions. The constitutionality of a particular search is a question of law that we review *de novo*. *Fenton v. State*, 2007 WY 51, ¶ 5, 154 P.3d 974, 976 (Wyo.2007) (quoting *Peña v. State*, 2004 WY 115, ¶ 25, 98 P.3d 857, 869 (Wyo.2004)).

## DISCUSSION

 [¶ 10] Our review is disadvantaged by the district court's very limited findings. The issue at hand is one that is very fact sensitive, and the district court's findings are the most significant single factor in the analysis of such cases. However, in this case the operative facts are amply established by Sergeant Beck's testimony at the hearing on the motion to suppress.

 [¶ 11] The resolution of this case turns on the application of our decision in *Vasquez v. State*, 990 P.2d 476, 488–89 (Wyo. 1999):

These past decisions establish that **Article 1, § 4 allows searches incident to arrest and can be said to allow automobile searches because arrestees had possession of it, and the arrest authorizes law enforcement to search it for evidence related to the crime.** *Wiggin,* 28 Wyo. at 491, 206 P. at 376. The provision requires, however, that **searches be reasonable under all of the circumstances.** *Kelly,* 38 Wyo. at 460, 268 P. at 572.

In the case of Vasquez, his erratic driving permitted an investigatory stop, and the strong smell of alcohol and failure of field sobriety tests authorized an arrest for driving while under the influence based upon probable cause. *Munger,* 43 Wyo. at 408–09, 4 P.2d at 1095. **The characteristics of a driving while under the influence arrest for suspected alcohol intoxication permit a search of the passenger compartment of the vehicle for any intoxicant, alcohol or narcotic, as evidence related to the crime of driving while under the influence.**

We have not considered whether, under the state provision, the permissible scope of a search incident to arrest for automobiles includes containers, and the specific question before us is whether the search of the fuse box for evidence related to the crime was reasonable under all of the circumstances. The State contends that *Belton* should be adopted as the rule under the state provision. *Belton* was formulated in answer to the specific question whether any privacy right existed for a vehicle occupant after arrest which justified limiting the permissible scope of a warrantless automobile search and which outweighed the need for national uniformity in a clear set of rules that would aid police. *Belton* **clearly offers minimal protection against an unreasonable search and seizure in order to effectively apply to the vast, national citizenry with which the United States Supreme Court must be concerned.** Our earliest decisions reveal our willingness to recognize exceptions to the warrant requirement for homes, automobiles, and other property, and implicitly recognize a *Belton*-type search without discussion of privacy interests or other rationale, but *Belton's* national citizenry rationale does not apply in Wyoming.

The United States Supreme Court and other jurisdictions recognize that the rationale for permitting searches incident to arrest is to prevent the arrestee from reaching weapons or concealing or destroying evidence. See *White,* 669 A.2d at 905. A search incident to arrest under our state

provision for these reasons is reasonable. The inherent mobility of automobiles in combination with officer and public safety concerns created when a driver or a passenger is arrested are exigent circumstances weighing in favor of not restricting the scope, timing, or intensity of such a search. In Vasquez's case, as the officers approached the vehicle with two passengers seated in it, shell casings in the back alerted them to the possibility of a small handgun, and an officer testified it was the possibility of the presence of this weapon which led to the search of the vehicle and the fuse box. The shell casings and the presence of two adult passengers presented an officer safety and a public safety concern which permitted a search incident to arrest although Vasquez's arrest had been accomplished and he was secure inside a patrol car. It appears from the record that the passengers were also arrested and, although we are not told, it would seem their arrest created the need for the officers to secure the vehicle if left on the roadside. In this particular case, we believe that the arrest justified a search of the passenger compartment of the vehicle and all containers in it, open or closed, locked or unlocked, for evidence related to the crime and for weapons or contraband which presented an officer or a public safety concern.

Is this result a narrower application than *Belton?* We think so. This result eschews a bright-line rule and maintains a standard that **requires a search be reasonable under all of the circumstances as determined by the judiciary, in light of the historical intent of our search and seizure provision.** *Peterson,* 27 Wyo. at 204, 194 P. at 345. It will not be common that a search of an automobile incident to arrest will violate that provision, and our decision should not raise new concerns for law enforcement. [Emphases added.]

*Vasquez,* 990 P.2d at 488–89.

[¶ 12] Recently, we applied *Vasquez,* for the first time, as the basis for reversing a district court's order denying a motion to suppress. *Pierce v. State,* 2007 WY 182, 171 P.3d 525 (Wyo.2007). The circumstances of this case, as set out above, differ markedly from those in *Pierce.* In the proceedings below, and in the briefs in this appeal, both parties discuss several of the "exceptions" to the essential rule established by *Vasquez.* Those exceptions include: (1) That an officer may search the area immediately available to an arrested person for weapons or other contraband that might pose a threat to officer and/or public safety; (2) that the presence of a second passenger in the car who could present a threat to officer or public safety may justify a search; (3) the possible need to secure an arrestee's automobile may justify a search; and (4) that in such circumstances an automobile may be searched **for evidence related to the crime which justified the arrest.**

[¶ 13] Because it is dispositive of this appeal, we will limit our consideration only to that exception which sanctions a search of the automobile for evidence which might relate to the crime for which Sam was arrested. Sam was arrested for multiple reasons, but the record is clear that the initial stop and the initial arrest were for violations of a protection order. Our careful review of the record convinces us that Beck's search of Sam's car was reasonable under all of the circumstances detailed above. That the cursory search of the car's interior uncovered evidence of the possession with intent to deliver proscribed narcotics, rather than evidence of the violation of the protection order, does not negate the admissibility of that evidence under our *Vasquez* rule. We do not think it is a requirement that a police officer be able to recite a specific list of what sorts of evidence might be relevant in such a circumstance, but some items identified were cell phones (which Sam used to make harassing calls), or writings of any sort that indicated what Sam's intentions were with respect to the individuals protected by the protection order. Other examples of evidence that might be pertinent would include instrumentalities that might be used to harass, harm or threaten protected individuals. See *deShazer v. State,* 2003 WY 98, ¶¶ 5–11, 74 P.3d 1240, 1243–44 (Wyo.2003).

[¶ 14] In the instant case, the officer who conducted the search was aware that Sam was the subject of an order of protection and that he had violated that order of protection several times over the preceding few days and, more importantly, he had done so in the hours and minutes just before the stop of Sam's vehicle and the effectuation of his arrest. The record suggests that it was more a pattern of violating the protection order, than just "a violation." The victims of Sam's aggression complained of receiving repeated cell phone calls from Sam on August 2–3, 2005. Sam was to have no contact whatever with his victims. The police officer was aware that Wyo. Stat. Ann. § 35–21–104(b) (LexisNexis 2007) provided: "An order of protection issued under this section shall contain a notice that willful violation of any provision of the order constitutes a crime as defined by W.S. 6–4–404, can result in immediate arrest and may result in further punishment." In addition, although the specifics of Sam's past violence were not detailed at the suppression hearing, in order for such an order to issue, the following sorts of behaviors must be proved:

(iii) "Domestic abuse" means the occurrence of one (1) or more of the following acts by a household member but does not include acts of self defense:

(A) Physically abusing, threatening to physically abuse, attempting to cause or causing physical harm or acts which unreasonably restrain the personal liberty of any household member;

(B) Placing a household member in reasonable fear of imminent physical harm; or

(C) Causing a household member to engage involuntarily in sexual activity by force, threat of force or duress.

Wyo. Stat. Ann. § 35–21–102(a)(iii) (LexisNexis 2007).

[¶ 15] In addition to the phone calls of August 2–3, 2005, Sam's victims went to the Crisis Intervention office on August 5, 2005, because Sam was again calling them repeatedly. Sam and a second occupant of Sam's car were seen driving by the crisis center by his victims, and this was reported to the police. While the victims waited for the police to arrive at the crisis center, Sam and his companion drove by a second time. Later that same afternoon, the police officer spotted Sam and his companion and stopped them. The police officer searched Sam's person incident to arresting him for violation of the order of protection. In *Vasquez* we said that a drunk driving stop justified the search of the vehicle's passenger compartment for intoxicants that could serve as evidence to sustain that crime. Here, it seems equally apt that there be a search for evidence which might serve to sustain Sam's prosecution for violation of the protection order and/or that he might have been an imminent and serious danger to his victims, given his behavior over the preceding several days.

**CONCLUSION**

[¶ 16] The district court's order denying the motion to suppress was not erroneous. Therefore, we affirm Sam's Judgment Upon Plea of Guilty and his sentence in all respects.

VOIGT, Chief Justice, dissenting, in which GOLDEN, Justice, joins.

[¶ 17] I respectfully dissent. In *New York v. Belton*, 453 U.S. 454, 460–461, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981), the United States Supreme Court held that, under the Fourth Amendment to the United States Constitution, an officer arresting the driver of a vehicle may contemporaneously search the passenger compartment of that vehicle, incident to that arrest. In *Vasquez v. State*, 990 P.2d 476, 480–89 (Wyo.1999), we rejected the minimal protection that *Belton's* "bright line rule" provides, and we held that Article 1, § 4 of the Wyoming Constitution provides greater protection. Specifically, we announced that Article 1, § 4 requires the search of an arrestee's vehicle to be "reasonable under all of the circumstances." *Id.* at 489. *See also Pierce v. State*, 2007 WY 182, ¶ 13, 171 P.3d 525, 531 (Wyo.2007), and *O'Boyle v. State*, 2005 WY 83, ¶ 30, 117 P.3d 401, 410 (Wyo.2005). Yet, in the instant case, both the officer and the district court relied solely upon *Belton's* "search incident to arrest" to justify the search of the appellant's vehicle.

[¶ 18] The majority lists four circumstances that it identifies as "exceptions" to the rule of *Vasquez*. I take that to mean that, in the majority's view, the search does not have to be reasonable under all of the circumstances in the following instances: (1) an officer may search the area immediately available to an arrested person for weapons or other contraband that might pose a threat to officer and/or public safety; (2) the presence of a second passenger in the car who could present a threat to officer or public safety may justify a search; (3) the possible need to secure an arrestee's automobile may justify a search; and (4) "that in such circumstances an automobile may be searched **for evidence related to the crime which justified the arrest.**" (Emphasis in original.) In my view, however, these are not exceptions to the *Vasquez* rule; rather, they are simply some of the circumstances that should be reviewed in determining whether the vehicle search was reasonable "under all of the circumstances." Most troubling to me is the idea that the arresting officer may always search the vehicle for evidence of the crime for which the driver was arrested. If that is the rule, then *Vasquez* has no meaning, and the vehicle may always be searched, because an arrested driver has always been arrested for the alleged commission of some crime.

[¶ 19] The officer did not claim to have probable cause to search the vehicle, nor did he claim to have a reasonable suspicion of anything when he searched it. The district court did not find that the officer had probable cause to search the vehicle, nor did it find that the officer had a reasonable suspicion of anything when he searched it. Rather, the officer said, "I searched it incident to arrest," and the district court said, "that is good enough." There was not even an attempt to enunciate what could have been the basis for reasonable suspicion until the State filed its brief in this Court, in which it speculated as to types of evidence that might have been in the car (the cell phone, a copy of the protective order, diaries or notes the appellant may have taken of the victims' whereabouts, photographs of the victims, or anything else which could show that appellant was violating the protection order). At the time of the arrest, however, the officer did not have a reasonable suspicion that those items were in the vehicle. Subsequent speculation does not make a search reasonable under all the circumstances.

[¶ 20] It is important not to confuse the concepts of searching an automobile under the automobile exception to the constitutional warrant requirement, and searching an automobile as an extension of the search of the person of the arrestee, incident to arrest. All warrantless searches are unreasonable *per se,* and therefore unconstitutional, unless the State proves one of the following exceptions to the warrant requirement:

- search of an arrested suspect and the area within his control;
- search conducted while in pursuit of a fleeing suspect;
- search and/or seizure to prevent the imminent destruction of evidence;
- search and/or seizure of an automobile upon probable cause;
- search and/or seizure under the plain view doctrine; and
- search resulting from entry into a dwelling in order to prevent loss of life or property.

*Peña v. State,* 2004 WY 115, ¶ 29, 98 P.3d 857, 870 (Wyo.2004). *Belton* and *Vasquez* do not concern themselves with the probable cause search of an automobile. Rather, they concern themselves with the first exception listed—the search of an arrestee and areas within his control. *Belton* says an officer arresting the driver of a car may always search the passenger compartment of the car (including containers therein); *Vasquez* says an officer arresting the driver of a car may only search the passenger compartment of the car if the search is reasonable under all the circumstances.

[¶ 21] I do not disagree with the proposition that factors such as officer safety and the presence of evidence may justify the search of an arrested person's vehicle. There simply was no showing in this case, at the suppression hearing, that those or similar factors existed. Article 1, § 4 of the Wyoming Constitution forbids the search of a

vehicle incident to the arrest of its driver unless such search is reasonable under all of the circumstances. The car search in this case, being purely a search incident to arrest, without justification under all the circumstances, was unlawful. The motion to suppress should have been granted, and the appellant should have been allowed to withdraw his guilty plea.